THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT WATKINS, Defendant-Appellant.

(No. 72-73;

Third District—August 13, 1973.

James Geis, Deputy Defender, of Ottawa, for appellant.

Martin Rudman, State's Attorney, of Joliet, (Ludwig Kuhar, Assistant State's Attorney, of counsel,) for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:·

Following a jury trial in the circuit court of Will County, defendant Robert Watkins was convicted of the crime of voluntary manslaughter

and was sentenced to the penitentiary for a term of not less than 7 nor more than 20 years. Defendant appeals from the judgment of conviction and from the sentence imposed and asserts (1) that he was not proven guilty beyond all reasonable doubt, (2) that the prosecution's closing argument to the jury was prejudicial, and (3) that his sentence was excessive.

It is clear from the record that Robert Watkins killed W. T. Wells on January 10, 1971. Wells was stabbed with a knife outside a tavern. A police officer, Sidney Edwards, who arrested Watkins a month after the killing, testified that Watkins volunteered that he had killed Wells. The tavern operator also testified that, following the stabbing, Watkins asked the tavern operator to call the police because he, Watkins, believed he had killed a man.

The only confusing element in the case arose from the testimony of Hardy Shaw, a companion of Wells and Watkins. Shaw was apparently the only eyewitness to testify. His testimony was inconsistent and contained divergent versions of how and exactly where the stabbing occurred. Shaw stated, on one occasion, that he was in the rear seat of an automobile parked outside the tavern. At the trial he stated he was in the driver's seat and had lied because his driver's license had been under suspension. Shaw's testimony, while somewhat muddled, was that Wells left the tavern. He testified that Watkins said, "Hold it a minute" and walked to the automobile where Watkins put his arm around Wells inside the car. Shaw said that immediately thereafter Wells was bleeding and was mortally wounded. Shaw also testified that he did not see Wells with a gun on that day. The testimony of John Wilson, who had been drinking in the tavern with Wells and Watkins, also confirms that Wells was waiting in the car. Wilson testified that Watkins stated, "Man, I had to do it, the guy was messing with me". Wilson also did not see a gun at any time.

Police officer Edwards testified that Watkins admitted the killing and that Watkins said that he had paid Wells for a bottle of gin that Wells had apparently stolen. Watkins said he did not receive the bottle from Wells. Watkins told the officer, that as Wells prepared to leave in the automobile, Watkins told Wells he would take the bottle for which he had paid and that Watkins said that Wells then called him some bad names and told him to get away from the car. He also said that Wells stated he would blow Watkins head off and that Watkins was not going to get anything. Edwards testified that Watkins then said that as Wells reached under the seat, Watkins attempted to save himself by stabbing Wells. Officer Edwards said he searched the automobile following the killing and found no gun in the automobile.

It appears from the record that Wells apparently did have a reputation for frequently carrying a sawed-off shotgun. He sometimes carried the gun' into taverns when he was drinking but there was no evidence that Wells had a gun with him on January 10, the day of the killing. Two witnesses, friends of Watkins, Virginia Williams and Eligha Tanner, testified that on January 9, 1971, the day before the killing, they had seen Wells, in the presence of Watkins, accost a boy with a shotgun and threaten to kill the boy.

■■ It is clear from the evidence that Watkins killed Wells, and that the jury, as finders of fact, was entitled to believe or disbelieve so much of the evidence as it wished. The triers of fact could reconcile any discrepancy which might have been raised by the testimony of various witnesses. (*People v. Hoffman*, 45 Ill.2d 221, 258 N.E.2d 326; *People v. Lawrence*, 126 Ill.App.2d 202, 261 N.E.2d 459.) The jury in the case could have ignored inconsistencies in Shaw's testimony. It was apparent that Watkins stabbed Wells and caused his death. It is contended that it should be implied from the police officer Edwards' testimony (concerning defendant Watkins' admission to him) that there was enough to show that defendant may have been acting under a sudden and intense passion resulting from serious provocation by Wells in accordance with the terms of Ill. Rev. Stat. 1971, ch. 38, sec. 9—2(a).

A contention is made by appellant that the State failed to discharge a burden that somehow developed upon the State and that it was required to prove beyond a reasonable doubt that Watkins' use of force was not justified, under the provisions of Ill. Rev. Stat. 1971, ch. 38, sec. 3—2.

■■ We do not find such burden imposed upon the State as a result of the testimony of Officer Edwards or any showing of record. Even if the testimony did raise such issue, the other evidence presented by the State showing that Watkins had been with Wells for a lengthy period prior to the killing and that no gun had been in Wells' possession, was sufficient to support a finding that beyond a reasonable doubt Watkins' use of force was not justified. Under Ill. Rev. Stat. 1971, ch. 38, sec. 7—1:

"A person is justified in the use of force * * * which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself * * *."

As we note from the record, the statement of Watkins made to the police officer did not indicate that Watkins (when he stabbed Wells) reasonably believed either that he was in danger of imminent death or great bodily harm, or that even if he did so believe, that his use of force to the extent of stabbing Wells was necessary to prevent such harm. We have only

the voluntary statement made by Watkins to the arresting officer on this issue, since Watkins did not testify in the case.

■■ The record discloses Edwards' statement as we have reported it in the course of this opinion. The prosecutor's argument simply attempted to show that Watkins' voluntary statement did not reflect the truth. Other witnesses, who had been in the presence of Watkins and Wells, had not seen a gun. No objection was made during the argument to such statements made by the prosecutor. We will not now overturn the Watkins conviction on the ground that somehow a valid distinction existed between whether the testimony was that Watkins said he *saw* Wells with a gun, or, alternatively, that Watkins merely assumed that Wells was in possession of a gun. The prosecutor had the right to argue and comment upon evidence in the record and any inferences which might be drawn from such evidence. We note also in the record that the apparent purpose of the testimony of defense witnesses, Virginia Williams and Eligha Tanner, was to show that during the night before the killing, but within 24 hours of the killing of Wells, Watkins had seen a gun in Wells' possession. Since the presence of the gun on the evening before the killing, and the absence of the gun on January 10, were each material to the defense of justifiable use of force, the prosecution certainly had the right to argue that, even though defense witnesses had testified that Wells was in possession of a gun the evening before the killing, the jury should consider that no gun was found on the scene or on the person of the decedent at the time of the killing.

It is finally contended that the sentence as imposed is excessive and should be modified. The sentence was within the range of penalties imposed for the crime of voluntary manslaughter under the terms of Ill. Rev. Stat. 1971, ch. 38, sec. 9—2. On January 1, 1973, voluntary manslaughter became a Class 2 Felony. Since it is a Class 2 Felony and subject to regulations applying to "an indeterminate sentence", the maximum is not to exceed 20 years with a minimum of not less than 1 year. (Ill. Rev. Stat., 1973 Supp., ch. 38, sec. 1005—8—1(a)(b)(3).) The minimum term specified therein, in section 1005—8—1(c)(3), is required to be "not greater than one third of the maximum term set." We note that while the investigating probation officer had recommended probation, following service by Watkins of some time in the penitentiary, the trial court was not bound by such recommendation. It appears from such report, also, that defendant spent 9 years or approximately 25% of his life in various penal institutions. While we might have imposed a sentence of fewer years or one consistent with the probation officer's recommendation, we cannot substitute our judgment on this issue for that of the trial judge who obviously exercised a reasonable discretion in view

of the record in this case. It is, however, obvious that the minimum sentence in this case should be reduced to six (6) years and eight (8) months.

■■ The judgment of conviction of the Circuit Court of Will County, therefore, is affirmed but the sentence in this cause is modified to provide that the minimum sentence imposed in this cause is a period of six (6) years and eight (8) months.

Conviction affirmed. Term of minimum sentence modified.

DIXON and SCOTT, JJ., concur.