THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DONALD R. BERETA, Defendant-Appellant.

(No. 58567;

First District (3rd Division)—June 20, 1974.

Paul Bradley and Martin Carlson, both of the State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and John M. Cutrone, Assistant State's Attorneys, of counsel), for the People.

PER CURIAM:

Defendant, Donald R. Bereta, was charged in a multiple-count indictment with the murder of Frank Guarisco and with the attempt murder and aggravated battery of Charles Woodard, in violation of sections 9—1, 8—4 and 12—4 of the Criminal Code. (Ill. Rev. Stat. 1969, ch. 38, pars. 9—1, 8—4, 12—4.) After a bench trial he was found guilty of the lesser included offense of voluntary manslaughter of Frank Guarisco and was found not guilty by reason of self-defense of the offenses of attempt murder and aggravated battery of Charles Woodard. He was sentenced to a term of 3 years to 8 years. On appeal he contends that he was not proven guilty of the offense of voluntary manslaughter beyond a reasonable doubt and that the minimum term imposed is excessive in light of the sentencing provisions of the Unified Code of Corrections.

During the early morning of October 9, 1971, the defendant, aged 22,

engaged in a fight with Frank Guarisco, aged 17, and Charles Woodard, aged 20, in which the latter two men suffered knife injuries inflicted by the defendant. Woodard suffered cuts to the arm and ankle, Guarisco suffered cuts to the arm and neck. He died from the latter wound.

Charles Woodard testified for the People that on October 8, 1971, he resided in the 3100 block of South Racine Avenue in Chicago with his wife, Donna, who was pregnant at the time, and his two children. At about 10:30 P.M. on that date he and Guarisco were in the apartment of Mary Rogers, defendant's fiancee, located at 45th and Halsted Streets in the city; also present in the apartment at the time were Mary Rogers and the defendant's brother and 19-year-old sister, Sandy. The witness had known the defendant for several years, the defendant being the godfather of one of his children, and the witness and Guarisco had gone to the apartment to congratulate the defendant on his impending marriage because the defendant's sister had earlier been to the witness' house but had not extended an invitation to a party at the Rogers apartment.

The witness testified that defendant entered the Rogers apartment, called the witness a "punk", stated that he had been looking for the witness, and threw a knife between the witness' legs. A struggle ensued between the witness and the defendant; Guarisco intervened to stop the fight; the defendant was knocked into a chair and stated that he was going to kill the witness and Guarisco; and the latter two men then left the apartment.

Charles Woodard testified that he and Guarisco then went to the witness' apartment and to a restaurant, after which they returned to the witness' apartment shortly before midnight. Woodard observed the defendant standing in the street in front of the apartment building with a knife in his hand, the witness asked him what he wanted, and the defendant again stated that he was going to kill them. The defendant lunged at Woodard with the knife, Woodard took a tire iron from Guarisco which the latter had taken from the witness' car, and the witness unsuccessfully tried to knock the knife from the defendant's hand. At this point, the witness' wife and Susanne Stell were outside, screaming, and the defendant stated that he could "stick" the knife wherever he wished; the witness testified that he became concerned at this remark because his family was present. Guarisco was watching the women and telling them to return to the apartment, when the defendant "turned off" the witness and lunged onto Guarisco, stabbing him; Guarisco fell to the ground and blood was coming from his neck. The witness ran to a corner shop to call an ambulance.

Charles Woodard testified that he did not see a house brick or any

other weapon in the hand of Guarisco at the time he was stabbed in the neck; Guarisco had solely attempted to stop the confrontation between the witness and the defendant. He further testified that prior to going to the Rogers apartment, he and Guarisco had been helping a neighbor pick up and deliver a television set, after which he had learned that the defendant's sister had been at his apartment; his wife did not tell him that if he went to the Rogers apartment to see the defendant's sister she would be "through with him."

Donna Woodard testified for the People that she was in her apartment with Susanne Stell when she heard her husband's car drive up about midnight. She and Stell went into the gangway next to the house from where she observed the defendant jump into the street with a knife and run after her husband, stating that he was going to kill him. The witness' husband then took a tire iron from Guarisco and struck the defendant on the arm, but failed to dislodge the knife from his hand. Guarisco had attempted to circle around the defendant, to prevent the latter from harming her husband; the witness took a hammer which Susanne Stell had been holding and threw it at the defendant, but missed. The defendant then made a motion as though he was going to throw the knife at the women; Guarisco stood between the defendant and the women, with his back to the defendant; and Susanne Stell threw a pop bottle at the defendant. The defendant approached Guarisco from the rear, stabbed him in the neck, and pulled him to the ground; Guarisco was holding nothing in his hands at the time. Mrs. Woodard further testified that earlier that evening, defendant's sister had been to the Woodard apartment looking for the witness' husband; that when her husband arrived home later he wished to go to the party to congratulate the defendant; that she was not upset over her husband wishing to attend the party without her; and that the defendant had been to the Woodard apartment earlier that evening looking for her husband.

Susanne Stell testified for the People that she and Guarisco resided in an apartment in the same building as did the Woodards; that she was in the Woodard apartment when Charles Woodard drove up about midnight and hollered; she took a hammer, and she and Donna Woodard ran outside, where she observed defendant with a knife threatening to kill Woodard. She observed Woodard take a tire iron from Guarisco and attempt to knock the knife from defendant's hand; Donna Woodard thereupon threw a hammer which she had taken from the witness. The defendant started to throw the knife at the women. Guarisco stepped between the defendant and the women and told them to return to the house, and the defendant approached Guarisco from the rear and stabbed him in the throat; defendant then pulled Guarisco to the ground

and fled. The witness did not know if Woodard had been cut prior to taking the tire iron from Guarisco. She saw no bottle in Guarisco's hands, and she heard no bottle crash, although she threw a bottle at the defendant when he was behind the deceased. The witness further testified that defendant's sister had been at the apartment earlier that evening, looking for Charles Woodard; Donna Woodard had told her (the witness) that defendant's sister had been telephoning her husband at work. When Charles Woodard arrived home that evening, Donna Woodard begged him not to go to the party; defendant had also been at the Woodard apartment earlier that evening and spoke to Donna Woodard concerning defendant's sister's coming to the apartment looking for Charles Woodard.

John Gudas testified for the People that he resided in a basement apartment near the Woodard residence and that he was employed as a security officer for the House of Correction. He had been watching television in his apartment about midnight when he heard screams outside; he observed the defendant with a knife, Charles Woodard with a tire iron, and Guarisco with a pop bottle, the three men standing in the street in the form of a "triangle." He also observed two women in the area and he heard that someone in the crowd had a hammer, but he had observed none. The witness determined that there would be trouble, he proceeded to his apartment to telephone the police, and a bottle was thrown, crashing near him; the bottle which was thrown was the one held by Guarisco, but he was not certain who threw the bottle. After placing the call to the police, the witness returned to the scene and observed Guarisco on the ground, bleeding from the neck. The witness saw no one throw a hammer during the confrontation, and he observed no bottle at the scene upon his return from his apartment.

Police Officer Albert Mientus testified for the People that he investigated the incident and found no weapons at the scene; defendant was stopped about two blocks from the scene.

Defendant testified in his own behalf that he resided with Mary Rogers in her apartment and that Mrs. Rogers was his fiancee. On October 8, 1971, he had arrived at her apartment, and present were Mrs. Rogers, defendant's brother and sister, and Woodard and Guarisco. Defendant had known Woodard for about 7 years, but had known Guarisco only casually; all three men had been drinking that day. The defendant spoke to Woodard, and Woodard told him that he had been told that there was a party in the Rogers apartment to celebrate the defendant's engagement. Defendant replied that it was not a party, but a family reunion, and that Woodard and Guarisco would have to leave, because the defendant and Mrs. Rogers were going to visit defendant's mother

and also because defendant's sister would have to babysit with Mrs. Rogers' children and defendant did not want them to remain in the apartment. Guarisco told the defendant that they did not have to leave and a scuffle ensued between the defendant and the other two men; defendant's sister attempted to stop the confrontation. Woodard and Guarisco left the apartment, with the defendant's sister following shortly. The defendant had a ten-inch knife with a six-inch blade on his person at that time, and he placed the knife on a table in the Rogers apartment but did not throw it at Woodard's feet.

Defendant further testified that after the confrontation with Woodard and Guarisco, he took the knife and went in search of his sister near Woodard's home. He observed Woodard's car drive up near the Woodard home, he approached Woodard and asked where his sister was, and Woodard took a tire iron from Guarisco who had gotten out of the car with it, and struck the defendant in the head with it. The defendant was struck with the tire iron again and fell to the ground. He then pulled the knife from his pocket and swung at Woodard's legs to keep him back. Woodard shouted that defendant had a knife, and Mrs. Woodard and Susanne Stell came out of the house. The defendant was kept on the ground by Woodard swinging the weapon; Woodard backed away and defendant rose to his feet; and defendant was forced to the middle of the street between Woodard and Guarisco, who blocked defendant's access to a nearby alley. Guarisco at this time was holding a house brick in his hand. Woodard then threw the tire iron at the defendant, missing him, and ran to a corner shop. As the defendant turned to run down the alley, Guarisco, still holding the brick, would not allow him to pass. Guarisco swung the hand with the brick at the defendant and defendant attempted to cut Guarisco on the arm; as the defendant swung the knife at Guarisco for that reason, the latter ducked and the knife struck him in the neck. The defendant fell to the ground, rose, and fled down the alley; he did not know what happened to the knife thereafter. The defendant testified that he had "calmed down" after the confrontation at the Rogers apartment and prior to seeing Woodard and Guarisco outside the Woodard apartment, and that he did not have his knife out of his pocket when he first observed the Woodard car arrive prior to the second confrontation. He further testified that he did not make complaint of his own injuries received in the fight until he was taken to the County Jail after his arrest.

Mary Rogers testified for the defendant concerning the confrontation at her apartment involving the defendant and the other two men. She recounted that although she was not in the room at the time, she heard

defendant throw his knife on the floor and that he took the knife when he left the apartment after the confrontation; defendant always carried the knife due to the character of the neighborhood. She stated that she had earlier asked Woodard and Guarisco to leave her apartment, and that defendant was angry when he left in search of his sister. Mary Marcotte testified for the defendant that she resided next door to the Woodard apartment, and that she was with Woodard and Guarisco while the latter men were securing a television set from her brother. The witness recounted that while at the Woodard apartment later that day she heard Mrs. Woodard tell her husband not to go to a party or she would "be through with him," and that about 10 minutes after Woodard left, the defendant arrived and conversed with Mrs. Woodard. Betty VanHoy also testified for the defendant that she resided next door to the Woodard apartment and that about midnight on October 9, 1971, she observed and heard Woodard and two other men walking and swearing outside; Woodard and one of the other men were in a confrontation with a lone man, who was stating that he did not want to fight but that if he had to he would take one of the others. The witness left her observation point, after which she heard Woodard exclaim, "Oh my God. He is dead." The witness observed no weapons during the confrontation. In rebuttal, Police Officer Mientus testified that defendant had a slight cut on his chin when he was arrested.

Prior to the finding of guilty, the trial court commented that Charles and Donna Woodard and Susanne Stell had "gotten together" on their testimony, that the question in the case was whether or not defendant acted in self-defense, and that the court was not inclined to believe the defendant's testimony as to the Frank Guarisco incident. The court noted that the truth was "somewhere in between" the testimony of those three witnesses and that of the defendant, and that "somehow" the three men got into a fight in the street. The court was of the opinion that the evidence did not make out a case of murder, but that it did prove that defendant was guilty of voluntary manslaughter; the court was also of the opinion that the defendant was not guilty of the offenses charged with regard to Charles Woodard since Woodard had been armed with a tire iron during the confrontation and defendant had therefore acted in self-defense as to Woodard. The court also noted prior to imposing sentence that it would not be known what happened during the confrontation, because of the conflicting stories, nor why the defendant drew the knife and slashed the deceased.

Defendant's contention that he was not proven guilty beyond a reasonable doubt is bottomed upon his theory that because the trial court

allegedly did not believe the testimony of the Woodards and Stell, his defense of self-defense went unrebutted, and upon the theory that the trial court expressed doubts as to the proofs in the case.

Contrary to defendant's contention, the trial court noted only that the Woodards and Stell had "gotten together" on their testimony; that finding does not, as defendant now contends, indicate that the court "totally rejected" their entire testimony. On the contrary, the court specifically stated that the truth in the case lay somewhere between their testimony and that of the defendant, and specifically found that Frank Guarisco was not armed at the time he was killed, which was the evidence offered solely by those three witnesses. As indicated by the trial court, the court believed a portion of the People's case and a portion of the defendant's case, as was his prerogative as the trier of facts. *People v. Watkins*, 13 Ill.App.3d 411, 413, 300 N.E.2d 308.

■■ The comments of the trial court, that the truth of the matter lay somewhere between the People's evidence and the defendant's evidence, and that the truth of the matter will never be known, does not indicate that the court was expressing doubt in connection with the evidence adduced as to defendant's guilt, as defendant now contends. Taken in the context in which the court had expressed those comments, it is apparent that the court was simply indicating, in accord with the general observations reflected in the *Watkins* case, that only portions of the evidence was to be believed and that the full truth of what actually triggered the altercation would never be known. Further, the fact that People's witness Gudas testified that Guarisco was armed with a pop bottle during the confrontation does not prove defendant's theory of self-defense as against Guarisco, as defendant contends; defendant himself testified that Guarisco was armed with a brick at that time, and Gudas also stated that the bottle had been thrown by some unknown person prior to the witness' entry into his apartment to call the police. The People adduced sufficient evidence upon which the trial court could have found the defendant guilty of the offense of voluntary manslaughter, and which rebutted his theory of self-defense as to Frank Guarisco.

■■ Defendant further contends that the offense of voluntary manslaughter is a Class 2 felony under the Unified Code of Corrections, the minimum term of punishment for which cannot exceed one-third of the maximum term imposed, and that the minimum term imposed in the instant case must therefore be reduced to a term of 2 years, 8 months, since the maximum term imposed was 8 years. The People concur in this viewpoint. Defendant's contention in this regard is correct, and since the instant case has not yet reached final adjudication and the sentencing provisions of the Unified Code of Corrections will benefit de-

fendant, the minimum term imposed must be modified to a term of 2 years, 8 months. Ill. Rev. Stat. 1973, ch. 38, pars. 9—2(c), 1005—8—1 (c)(3); *People v. Harvey*, 53 Ill.2d 585, 294 N.E.2d 269.

For these reasons, the sentence imposed upon defendant is modified to a minimum term of 2 years, 8 months and a maximum term of 8 years, and the judgment as so modified is affirmed.

Judgment affirmed as modified.

Mr. JUSTICE MEJDA took no part in the consideration or decision of this case.