THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RALPH MONTGOMERY, Defendant-Appellant.

First District (5th Division)　No. 76-782

Opinion filed July 29, 1977.

James Geis and William S. Clark, Jr., both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Mary Ellen Dienes, and Timothy Quinn, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Following a bench trial defendant, Ralph Montgomery, was found guilty of aggravated battery and was sentenced to the Illinois Department of Corrections for a term of two to six years. Defendant appeals and contends that: (1) he was not proved guilty beyond a reasonable doubt; and (2) the trial court erred in excluding testimony concerning the victim's violent character.

We affirm. The pertinent facts adduced at trial follow.

*Reginald Bonds*

The victim, Benny Oliver, is his brother. On March 3, 1974, in the late afternoon, he was present in his brother's home. Bonds and his brother were gambling on the premises along with defendant and Walker. No one was drinking. He and Walker got into an argument while gambling. Walker and defendant left the premises, followed by Bonds, who went to his mother's house approximately 50 feet "down the alley" on the adjoining block. Oliver, his brother, remained at his own house.

Bonds remained at his mother's house for "about a minute and a half," and told his mother of the argument that had occurred. He then left and walked around the block back toward the front of Oliver's house. He saw defendant come across the street and hit Oliver with a pipe about three feet long "right across the eye and jaw." Bonds was approximately 15 feet from the defendant and Oliver, who "were standing in Benny Oliver's gangway," when the blow was struck. Oliver did not have a weapon in his hands when struck by the defendant. Bonds did not hear conversation between the two prior to the blow.

Bonds "thought" defendant was holding the pipe in two hands when he crossed the street to hit Oliver. After being hit, Oliver "stumbled on and went into the house," and Bonds got ready to fight with defendant. Bonds' father stopped him from doing so, however. Approximately six minutes later Bonds entered the house and saw Oliver unconscious on the living room floor. Oliver was transported to the hospital about one hour later. When police arrived on the scene Bonds did not speak with them. He later spoke with Officer Bertucci on or about March 25, 1974. He did not recall telling Bertucci that he saw defendant running away when he arrived on the scene, nor did he recall telling Bertucci that he saw Oliver lying on the sidewalk.

*Benny Oliver*

He had been gambling at his house on March 3, 1974, with Bonds, Walker and defendant. Oliver had been drinking while gambling. Although an argument occurred concerning the gambling, Oliver stated that he did not threaten defendant or Walker. The three other men left the premises. About 15 minutes later, Oliver went to the front of his house and stood "right at the corner of the gangway." He noticed defendant and Walker also on the street and watched them for about 10 minutes. Oliver did not possess a weapon. Defendant came charging across the street at him, with a pipe in his right hand and a gun in his left. Defendant called Oliver "some kind of name" as he approached. As defendant ran at him, Oliver heard his sister call him and he turned to her. When he looked back he saw the pipe "coming down" at him, and that is all he remembered. Defendant hit him twice, and he had no idea why he did so. As a result, Oliver lost the sight in his left eye.

*Chicago Police Investigator Frank Bertucci*

He arrested defendant on March 25, 1974. On that date he spoke with defendant, Oliver and Bonds. During questioning at the police station defendant admitted hitting Oliver, but claimed that Oliver had a stick in his hand at the time. Oliver told him defendant and Walker had fought with Bonds earlier, and that defendant and Walker had attacked him when Bonds fled. Oliver did not tell Bertucci that Walker struck him, only that defendant struck him. Bonds told him that he saw defendant and Walker fleeing the scene, and that Oliver was lying on the sidewalk.

*Karen Kimbrough* (for the defense)

She had known defendant and Oliver for five years. On the evening in question as she arrived to visit defendant, she saw defendant and Oliver arguing in the alley behind Oliver's house. Neither defendant nor Oliver possessed weapons at that time. The argument lasted about 15 minutes, after which she accompanied defendant across the street to his house and sat with him on the porch. Shortly thereafter Oliver came out of his gangway shouting obscenities at defendant. This lasted for about five minutes, during which time Oliver obtained a stick, shook it, but did not cross the street.

Defendant walked across the street unarmed when Oliver uttered a remark concerning defendant's mother. Bonds was standing approximately seven feet from Oliver after defendant crossed the street. The argument between Oliver and defendant continued, and then Oliver tried to hit defendant with a stick he was holding. Defendant dodged the blow and picked up another stick. They continued arguing and swinging

at each other until finally defendant landed a blow. During this time Bonds was watching the entire proceedings. Defendant received a scrape on the jaw from Oliver during the incident. Oliver did not fall or stumble when struck by defendant. Instead, he ran toward the alley, followed by Bonds. Bonds did not challenge defendant when Oliver was hit. Ms. Kimbrough, who observed the incident from a distance of five or six feet, then walked with defendant back to his own house.

## Defendant

On March 3 he was gambling in Oliver's home with Walker, Bonds and Oliver. Oliver was "drunk when he got there." Arguments sprang up during the gambling; however, no threats of bodily harm were made. All the participants left together. The argument resumed in the alley and continued for about 15 minutes, at which point Oliver tried to pull a knife out of his pants and Walker hit him in the jaw. The knife flew out of Oliver's hand and into the grass. Bonds did nothing at this time. Defendant and Ms. Kimbrough then went across the street to his home and sat on the porch.

Oliver came out of his gangway yelling obscenities at defendant for about 10 minutes. Oliver held a stick but did not cross the street. Defendant crossed the street to Oliver, however, "after he called me out." As he approached Oliver, defendant had nothing in his hands and said nothing. When he was within two feet of Oliver, Oliver threatened to "bust his head" with the stick he was carrying. Oliver then swung at defendant who fell to the ground and picked up a stick of his own. They began a series of swings at each other and finally, after receiving a blow to his jaw, defendant hit Oliver. Each of them then went home. During the incident, defendant saw Bonds standing approximately five feet away.

## Opinion

Defendant, whose theory at trial was self-defense, initially contends that he was not proved guilty of aggravated battery beyond a reasonable doubt in that "the trial judge found the State's evidence unsatisfactory and in addition, its findings support the innocence of the defendant." Defendant points to certain comments of the trial court as indicating that the evidence was insufficient to remove a reasonable doubt of guilt. We disagree.

Defendant initiates his argument by noting the statement of the trial court that the case left much to be desired on both sides. Defendant contends that the court's "dissatisfaction with the State's case is easily understandable," in light of the incredible testimony elicited from the State's witnesses. Specifically, defendant points to the following

statement by the trial court as indicating that the court found Benny Oliver's testimony incredible because Oliver's detailed description of what occurred is inconsistent with his being surprised by the blow:

> "Well, it's possible that would happen. Prosecution witnesses say that it happened another way. And there is an inconsistency. The way the prosecution witness said that there is no question about that the victim said that he was alerted to the imminent—to the impending danger by a relative who said look out. And he turned around just in time to catch the blow. I hate to do this. And sees that the defendant had an iron pipe in his right hand and a pistol in the left hand. I don't know. But he says he saw it.
>
> I agree with you, Mr. Cheeks [defense counsel], I don't see how he could see all those things and it's—but we're still left with the fact that he did get this blow. And his attempt to explain it—defendant's attempt to explain it is not sufficient to show that there was any provocation."

Our review of the record, however, indicates that there is no inconsistency in this regard. Oliver observed defendant cross the street, turned to his sister in response to her call, and when he turned back toward defendant he was struck immediately. While the trial court apparently misapprehended this sequence of events, the comments do not, as defendant now contends, indicate an abiding dissatisfaction with Oliver's testimony. Rather, the court went on to clearly say that the State's evidence established that Oliver was unarmed when struck by defendant, and specifically found defendant guilty beyond a reasonable doubt. Under such circumstances we cannot construe the trial court's comments as to the victim's ability to see all that he testified into a reasonable doubt of defendant's guilt.

Defendant also argues that the trial court was not satisfied by the State's evidence because the testimony of Reginald Bonds and Benny Oliver conflicted as to the number of weapons carried by defendant, the manner in which he held the weapon, and the number of blows struck. Defendant concludes from such inconsistencies that "one or both of the witnesses was not telling the truth."

■■ In response, we note initially that such conflicts in testimony were not cited by the trial court as examples of any "dissatisfaction" with the State's case. In addition, in a bench trial the trial court's determination concerning the weight and credibility to be afforded the testimony of any witness will not be disturbed on review unless palpably erroneous. (*People v. Arndt* (1972), 50 Ill. 2d 390, 280 N.E.2d 230; *People v. Guido* (1962), 25 Ill. 2d 204, 184 N.E.2d 858; *People v. Nichols* (1975), 32 Ill. App. 3d 265, 336 N.E.2d 194.) Discrepancies in testimony, such as those cited by defendant, do not destroy the credibility of the eyewitnesses, but only

go to the weight to be afforded their testimony. (*People v. Bergeron* (1973), 10 Ill. App. 3d 762, 295 N.E.2d 228; *People v. Willis* (1970), 126 Ill. App. 2d 348, 261 N.E.2d 723.) In the instant case the trial court chose to believe and credit the testimony of Bonds and Oliver as it related to the main issue in the case; *e.g.*, that defendant was armed in some manner when he crossed the street and approached Benny Oliver, who was unarmed. We cannot say that the trial court erred in so doing.

We also note that there is no basis upon which to support defendant's inference that one or both of these witnesses committed perjury in the instant case. Such contradictions in testimony as those alluded to by defendant only go to the weight of the evidence and do not in any way indicate perjury. *People v. Nuccio* (1973), 54 Ill. 2d 39, 294 N.E.2d 276; *People v. Moore* (1969), 42 Ill. 2d 73; 246 N.E.2d 299, *aff'd in part and rev'd in part*, 408 U.S. 786, 33 L. Ed. 2d 706, 92 S. Ct. 2562 (1972).

Defendant argues that the credibility of Bonds as a witness is further weakened because his testimony conflicts with that of Officer Bertucci. At trial, Bonds testified he did not tell Bertucci that he saw Oliver lying on the sidewalk, and he did not recall telling Bertucci that he saw defendant and Walker fleeing as he arrived on the scene. Officer Bertucci testified to the contrary. Again, such discrepancies merely go to the weight to be given such testimony. In the instant case, all occurrence witnesses placed Bonds on the scene when the blow was struck; thus the trial court can hardly be faulted for apparently crediting the testimony of Bonds. Moreover, a conviction may rest upon the testimony of a single witness, if positive and credible, even though his testimony is contradicted by the accused. (*People v. Pride* (1959), 16 Ill. 2d 82, 156 N.E.2d 551; *People v. Echoles* (1976), 36 Ill. App. 3d 845, 344 N.E.2d 620.) Thus, if it had so chosen, the trial court could have based its verdict solely on the testimony of the complaining witness.

Defendant next points to the following comment by the trial court:

> "What stands out is that the victim, who was taunting the defendant and in a fashion which was intended to and which did aggravate the defendant. That the defendant left his home, his porch, and walked across the street, to where the victim— complaining witness was. And there, a fight ensued and the victim was severely injured. Those facts, everyone agrees."

Defendant claims that "implicit in the above statement is the rejection of the testimony of Oliver and Bonds since they denied the very facts which the court found undisputed." We cannot agree.

■■ It is apparent that in the instant case the trial court, in finding defendant guilty, believed a portion of the State's case and a portion of defendant's case, as was its prerogative as the trier of fact. (*People v. Echoles; People v. Bereta* (1974), 20 Ill. App. 3d 867, 314 N.E.2d 659.)

While the trial court accepted defense testimony concerning the taunting of defendant, it also specifically relied on the State's witnesses to find that the victim was unarmed when struck by defendant, which testimony as the court stated, "makes the defendant guilty beyond a reasonable doubt." Since aggression by a victim, sufficient to justify a finding of self-defense, is not established by a finding that the victim called the defendant foul names (see *People v. Dare* (1919), 288 Ill. 182, 123 N.E. 321), the trial court here properly concluded that "defendant's attempt to explain it [the blow] is not sufficient to show that there was any provocation." Thus, the court, based on its determination of the facts, properly rejected defendant's claim of self-defense.

In sum, the court's remarks concerning facts to which "everyone agrees" reflect nothing more than a portion of the court's decision-making process. Certainly, they can in no way be construed as indications by the court that it entertained a reasonable doubt of defendant's guilt.

Lastly, defendant refers to the trial court's comments during the sentencing hearing, and claims that these remarks manifest speculative decision-making by the court. Specifically, he points out the following remarks by the court:

"I'm impressed by his [defendant's] weight and size as opposed to the weight and size of the victim. It says here he was five feet nine and weighs 210 pounds, about 25 years old, and it appears that is not correct. It is my recollection the victim was about five feet seven or eight, weighing about 130 pounds, no match. Even if there had been an attack by the victim on defendant, a man is entitled to repel an attack, not to punish someone for having attacked, even if he did by the self-defense theory, which I don't know."

Defendant ignores, however, the unequivocal statement by the trial court reiterating its prior guilty finding, made at the completion of post-trial motions just prior to sentencing:

"The Court: Having considered the past arguments and the arguments today I am still not persuaded that there was unsufficient [*sic*] evidence for a finding of guilty and he is guilty beyond a reasonable doubt, and therefore, the defendant's motion for a new trial and judgment, will be denied."

Under these circumstances we must view the court's remarks as, at best, consideration by the court of a hypothetical fact situation and the law applicable thereto, in response to defense arguments during the hearing on post-trial motions. This reference by the court to a hypothetical state of facts, however, cannot be elevated to a reasonable doubt of guilt where the court has previously rejected defendant's self-defense claim, found that the victim was unarmed when attacked by defendant, and has twice stated that defendant was "guilty beyond a

reasonable doubt." *Cf. People v. Miles* (1971), 133 Ill. App. 2d 599, 273 N.E.2d 647.

Defendant's second contention is that the trial court erred in excluding testimony concerning the victim's violent character. During defense counsel's direct examination of Karen Kimbrough the following exchange occurred:

"Q: Are you familiar with Mr. Oliver's reputation in the community for violence?

A: Some of them.

Q: Do you know of specific instances of Mr. Oliver's violence?

MR. ROMANO [prosecutor]: Objection.

THE COURT: Objection sustained.

MR. CHEEKS [defense counsel]: Basis?

THE COURT: Not material."

Defendant now argues that such questions constituted an attempt to introduce evidence of the victim's violent character. However, we agree with the State that this argument should have been presented to the trial court in the form of an offer of proof, and that failure to do so precludes review of defendant's claim on appeal.

■■ Where testimony is refused by the court, no appealable issue remains unless a formal offer of proof is made (*Harris v. Algonquin Ready Mix, Inc.* (1973), 13 Ill. App. 3d 559, 300 N.E.2d 824, *aff'd*, 59 Ill. 2d 445, 322 N.E.2d 58 (1974)), or it is apparent that the trial court understood the nature of the objection and the character of the evidence intended to be introduced (*Schusler v. Fletcher* (1966), 74 Ill. App. 2d 249, 219 N.E.2d 588), or where the question itself and the circumstances surrounding it are sufficient to indicate the problem and the admissibility of the evidence. (*Creighton v. Elgin* (1944), 387 Ill. 592, 56 N.E.2d 825; *Ryan v. McEvoy* (1974), 20 Ill. App. 3d 562, 315 N.E.2d 38.) In the instant case no offer of proof was made and it is not apparent from the attendant circumstances that the court should have been aware of exactly what testimony the defense was seeking to elicit, and to what end. The alleged purpose of trial counsel to elicit character testimony was hardly evident when the question was asked, in light of counsel's immediately-preceding inquiry into the victim's reputation in the community.

■■ Our Supreme Court stated in *People v. Hicks* (1935), 362 Ill. 238, 243, 199 N.E. 368, 370, that:

"While the terms 'character' and 'reputation' have sometimes been loosely and synonymously used, such use is inaccurate in that it fails to recognize that 'character' means what a person really is while 'reputation' means what he is supposed or estimated to be."

Thus, specific acts of prior aggression are not admissible to prove one's

reputation; but they may be admissible as tending to establish one's character. (See *People v. Baer* (1976), 35 Ill. App. 3d 391, 342 N.E.2d 177.) In the instant case counsel's question regarding specific instances of violence occurred in the context of an inquiry into the victim's reputation in the community. It is not evident from the record that counsel was abandoning his line of inquiry into the victim's reputation. Indeed, from the record it would appear that counsel was continuing inquiry into the victim's reputation when he asked the witness whether she knew "of specific instances of Mr. Oliver's violence." This impression finds support in defense counsel's opening statement to the trial court in the case at bar, wherein counsel represented that *reputation* evidence would be elicited. Thus, where it would appear that this question concerning specific acts of violence was aimed at eliciting reputation testimony, the question would be improper and an objection to it properly sustained.

■■ It is for this reason that an offer of proof concerning the nature of the testimony sought, *i.e.*, reputation or character, was necessary. Under the circumstances it was perfectly natural to assume counsel was eliciting reputation testimony. Thus, the failure to make an offer of proof prevents this court on review from knowing what the testimony actually would have been, reputation or character, and we therefore cannot review any alleged error in its exclusion. *People v. Burris* (1971), 49 Ill. 2d 98, 273 N.E.2d 605.

Furthermore, we note that there was nothing to prevent a rephrasing of the question by trial counsel, nor was there anything to preclude counsel from continuing his inquiry into the victim's reputation and thereafter initiating inquiry into the victim's alleged violent character. There was no *in limine* order entered by the court precluding such inquiries. Thus, defendant's contention that the trial court's ruling precluded full presentation and development of his defense of self-defense is wholly without merit.

For the foregoing reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.