THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RAYMOND HALL, Defendant-Appellant.

First District (5th Division)    No. 80-853

Opinion filed March 12, 1982.

Nicholas A. DeJohn and Ronald Anthony Rascia, both of Nicholas A. DeJohn & Associates, Ltd., of Chicago, and Scott Gibson, law student, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Ruth Stern Geis, and James Klein, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, defendant Raymond Hall was found guilty of armed robbery (Ill. Rev. Stat. 1977, ch. 38, par. 18—2) and was sentenced to a term of 10 years. He appeals contending that (1) the evidence is not sufficient to prove his guilt beyond a reasonable doubt; (2) he was denied a fair trial when the State improperly cross-examined him about another crime unrelated to this prosecution, and (3) he was deprived of a fair trial by the improper closing arguments of the State.

The following pertinent evidence was adduced at trial.

Andrew Robertson, the owner of the Harvey ATC Cab Company, was dispatched to pick up a passenger in front of a lounge at 159th and Dixie Highway in Harvey, Illinois, at 12:30 a.m. on May 22, 1978. Robertson testified that defendant was standing in a well-lit area when he

arrived at the lounge; that as defendant entered the cab the inside light went on and Robertson observed him for about a minute.

He described defendant as being approximately 5 feet 7 inches tall, weighing between 150 and 160 pounds and appearing to be in his late forties or early fifties, wearing a long green army coat, a billed cap, gloves, and carrying a green bag with two flaps on it.

After driving for six blocks, he heard a click. He turned to see defendant pointing a gun at the right side of his head. Defendant told Robertson to drive straight ahead and not to try anything or else defendant would shoot him. He ordered Robertson to continue driving on various streets. When another car pulled alongside as the cab stopped for a traffic light at the intersection of 147th and Kedzie, defendant pointed the gun at Robertson's ribs. He looked at defendant at this time. The lighting from the street and the traffic lights illuminated the area very well. When the traffic light changed Robertson continued to drive. Defendant ordered him to pull the microphone cord out of the cab radio, which he pretended to do, and defendant said, "If the dispatch answers you, I'm going to kill you."

Defendant commented that he had never seen Robertson before, and asked him if he knew the Jamaican driver, stating, "You got a Jamaican working with you all over there. That's who I wanted." Robertson replied that he was not certain who defendant was referring to because he did not know "many of the guys."

They were near 119th and Lafayette when defendant told him to park the cab, move slowly over to the passenger seat, remove all of his clothes and get down on the floorboard. Defendant then entered the driver's seat and drove the cab with his left hand holding the gun in his right hand.

He drove for 15 minutes and then parked the cab at 109th and Racine. When the defendant pulled off his gloves, Robertson saw that he did not have fingers on his left hand, and that there were three or four rings on the nubs of that hand. On cross-examination, Robertson admitted that he had previously testified at the pretrial hearing that it was the fingers of defendant's right hand which were partially amputated, and that the defendant held the gun in his right hand.

Defendant searched through Robertson's clothes and took the money out of them. He ordered Robertson to unbolt the cab radio and when Robertson threw the radio at defendant in an attempt to knock the gun out of his hand, the gun discharged. Defendant said, "Get out right now or I'll kill you." He then tossed Robertson's clothes out of the cab window and drove away.

Robertson dressed and summoned a police car approximately seven minutes later. After explaining to Chicago police officers Raymond Elder

and Michael Thomas that he had just been robbed, they drove through the area in an unsuccessful search for the cab. A police report was made later which described the robber as weighing 163 pounds and having black hair. The report does not have any reference to the assailant's deformed hand.

The following day, Robertson spoke with Dan Narty, one of his drivers who had grown up in a Jamaican neighborhood in England, and when he described his assailant to Narty including the fact of the injured hand, Narty told him that Raymond Hall fit that description. Dan Narty testified that defendant was one of his regular customers and often carried a green bag.

Narty saw defendant going to the Harvey, Illinois, courthouse, a half block from the cab company headquarters, on June 6, 1978 and he immediately told Robertson. After Robertson went to the courthouse and observed defendant for 10 minutes in a courtroom he called two policemen who subsequently arrested defendant.

On defendant's behalf, a nurse at Oak Forest Hospital testified that, according to her records, defendant weighed 112 pounds on June 6, 1978. His wife, Delores Hall, stated that defendant has had gray hair for the last 15 to 20 years, and that he never wore jewelry. She further testified that defendant was home with her on May 22, 1978.

Defendant testified on his own behalf that he has only one partial finger on his left hand due to an industrial accident in 1972. He cannot wear rings on his left hand due to poor circulation. He has not driven a car since his driver's license was suspended in 1976 or 1977.

On direct examination he was asked about his ability to drive at all:

Q. "Now, are you able to drive. You're able to drive?
A. *If I drove a car, it would have to be with my right hand.*
Q. Can you drive with your *left* hand?
A. No, that's impossible." (Emphasis supplied.)

Defendant earlier related that on June 6, 1978, he was going to the Traffic Court in Harvey, Illinois, for a traffic ticket. On cross-examination, over defense objections, the prosecution inquired into the nature of the case. Defendant testified that he was going to court to answer a 1978 charge of drunk driving.

He denied, however, that he was driving the car involved when he was arrested for drunk driving and stated that he had only been waiting in the passenger's seat while the car owner went to find a tow truck. He admitted that when the police arrived at the scene he was arrested for drunk driving.

The State questioned defendant concerning the incident:

"Q. Regardless of the charge itself, sir, you were going because of a driving ticket, is that correct?

A. That's correct, sir.

Q. So that you did in fact drive back in 1978? Is that correct?

A. That is incorrect, sir.

Q. O.K. then you were charged with a charge that you were not driving with? [*Sic.*]

A. I was arrested in a car, sitting in a car."

During cross-examination of defendant, the State made five separate references to the defendant's drunk driving charge. Some of the questions were similar to the following: "Q. And they charged you with drunk driving, is that correct? A. Correct." The court overruled repeated objections to the relevancy of this testimony and stated:

"And I had ruled on the matter of relevancy and in the event it isn't stated for the record I will state it for this time. One of the issues before the jury has to do with Mr. Hall's physical condition, and his ability, due to his hand which had been partially amputated, *to drive a car.* The State's line of questioning as to driving a motor vehicle while intoxicated is relevant as to that issue." (Emphasis added.)

In rebuttal, Harvey police officer Bruce Warrer testified that he had observed defendant driving into a ditch on April 8, 1978. He stated that he had the car in sight at all times and no one fled from it. He found defendant slumped over the steering wheel of a car which had been loaded with so many belongings that there was no room for any other passenger.

OPINION

Defendant first contends that he was not proved guilty beyond a reasonable doubt and in support of this contention argues that the evidence adduced at trial shows:

(1) that the assailant's injured hand is omitted from the description given in the police report; (2) that there is a 40-pound discrepancy between the defendant's and the described assailant's weight; (3) that his hair is gray and not black as the police report reflects; and (4) that Robertson's identification of defendant was unduly suggested to him by a third person, Dan Narty.

It is understandable that untrained persons may give varying descriptions of another person's height, weight or color of hair. Discrepancies in testimony, such as those argued by defendant, do not destroy the credibility of the witnesses but go only to the weight to be afforded their testimony (*People v. Montgomery* (1977), 51 Ill. App. 3d 324, 366 N.E.2d 623) and, to the extent that their testimony is conflicting, it is the province of the trier of fact to resolve the conflict and decide which witness or witnesses will be believed (*People v. Hine* (1980), 88 Ill. App. 3d 671, 410

N.E.2d 1017), particularly if the witness is questioned at different times, under trying and difficult conditions. *People v. Byrd* (1976), 43 Ill. App. 3d 735, 357 N.E.2d 174.

Furthermore, unless the evidence is so improbable as to raise a reasonable doubt of guilt (*People v. Dempsey* (1980), 82 Ill. App. 3d 699, 402 N.E.2d 924), it is well settled that a reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence and the credibility of witnesses. *People v. Sanders* (1980), 86 Ill. App. 3d 457, 407 N.E.2d 951.

■█ In the present case, the evidence produced at trial, although conflicting, was not so improbable as to raise a reasonable doubt of defendant's guilt. We therefore will not substitute our judgment for that of the trier of fact as to defendant's guilt.

Defendant also argues that Robertson's identification of him was unduly suggested to Robertson by a third person, Dan Narty. As a general rule, when the identity of an accused is at issue, the testimony of a single witness is sufficient if (1) the witness is credible, and (2) the accused is viewed under circumstances which would permit positive identification to be made. *People v. Richard* (1980), 90 Ill. App. 3d 322, 413 N.E.2d 5.

In the present case, the evidence adduced at trial discloses that the victim had an excellent opportunity to observe his assailant at close proximity and for an extended period of time during the commission of the robbery. Robertson then described the defendant to Narty because of the defendant's own reference to a Jamaican driver, and only then did Narty remember the defendant and his name.

■█ We note that although Narty pointed defendant out to Robertson following a chance encounter, only Robertson followed the defendant to the Harvey courthouse where he alone identified the defendant, and summoned police to arrest him. Under these circumstances, we conclude that defendant's identification was independent and free from suggestive influence. See *People v. Williams* (1980), 90 Ill. App. 3d 524, 413 N.E.2d 60.

Defendant next contends that the trial court erred in allowing the State to cross-examine him concerning the drunk driving charge.

Generally, evidence that a defendant has committed an offense which is separate and distinct from the offense for which he is being tried is not admissible because of its prejudice. (*People v. Turner* (1979), 78 Ill. App. 3d 82, 396 N.E.2d 1139.) Even when the evidence of other crimes has substantial independent relevancy, this purpose can be outweighed by the danger that the jury will convict a defendant because it appears that he is of bad character and therefore probably committed the crime, rather than because of the evidence of his guilt or innocence in the case on trial. *People v. Butler* (1975), 31 Ill. App. 3d 78, 334 N.E.2d 448.

Nevertheless, evidence of an "other crime" is admissible, if relevant, to prove a material fact only if the probative value of such evidence outweighs its prejudicial effect. *People v. Tuczynski* (1978), 62 Ill. App. 3d 644, 378 N.E.2d 1200.

In the present case, the record is clear that the trial court allowed cross-examination on the drunk driving charge in order to prove that defendant was able to drive. However, defendant had already admitted on direct examination that he could drive a car with his right hand, even though he testified he could not drive with only his injured left hand.

In addition, although there was testimony that showed that defendant possessed a valid driver's license for four or five years after the disabling accident, he only denied being the driver of a car on one occasion in 1978. He did not deny that he was able to drive on that date.

The discrepancies apparent in this record as to defendant's weight, height and color of hair, the failure of Robertson to include any reference to defendant's injured hand, and as to whether any rings were or could be worn on the nubs of the defendant's injured hand do not destroy the credibility of the witnesses, but go only to the weight to be afforded their testimony. (*People v. Montgomery* (1977), 51 Ill. App. 3d 324, 366 N.E.2d 623.) However, we find that the testimony concerning the drunk driving charge improperly lessened the weight of defendant's testimony in a close case and was inadmissible. We believe that this created a danger that the jury might infer that defendant was of bad character and therefore probably committed the crime rather than objectively weighing the conflicting evidence presented.

We note that under our concept of a fair and impartial criminal trial, it is elementary that a defendant is entitled to have his guilt or innocence determined solely with reference to the crime with which he is charged. *People v. Pitts* (1971), 1 Ill. App. 3d 120, 273 N.E.2d 664.

■■ In the present case, evidence of defendant's drunk driving charge was not relevant to prove an issue of material fact and was therefore inadmissible. We conclude that because evidence of a prior charge was admitted against the defendant in this case, he did not receive the fair and impartial trial to which he was entitled.

Finally, defendant argues that the prosecutor committed reversible error by accusing the defense counsel (1) of attempting to testify, (2) of fabricating a defense, (3) of interjecting personal beliefs, and (4) of stating that the defendant witness was "well coached" during his closing argument.

With one exception, the pertinent portions of the prosecutor's argument were not objected to by the defense. However, it is well established that allegedly prejudicial remarks made during closing arguments are

waived when no objection is made. *(People v. Calderon* (1980), 85 Ill. App. 3d 1030, 407 N.E.2d 840.) Consequently it is our opinion that defendant has not preserved those issues for review by this court.

The one issue of alleged prosecutorial misconduct which was preserved occurred when the prosecutor referred to the defense counsel's cross-examination of Robertson. Robertson had testified on direct examination that defendant carried a green bag. On cross-examination, the defense counsel asked Robertson:

"Q. Now you stated when you arrived at that location you saw a man and he had a blue looking bag with two flaps on it, is that accurate?

A. It was."

During closing argument, the prosecutor made the following statements to the jury:

"Now when Mr. Stone came up and asked him a question he said, 'Now isn't it true that you said this guy had a coat and a hat and a blue bag in his hand?' Just brushed over the blue bag real fast, didn't he? All of a sudden in some of your minds you said, 'Whoa, first he said green,' now he says blue. But see, the witness was tricked. Just throw in that word there."

By these remarks, defendant contends that the prosecutor was charging the defense with intentionally misleading the jury by distorting the evidence. While we agree that the prosecutor's remarks were improper, this other allegation of prosecutorial misconduct is not likely to occur again at retrial, and we need not consider it here.

For the foregoing reasons the judgment of the trial court is reversed and the cause remanded for a new trial.

Reversed and remanded.

SULLIVAN, P. J., and WILSON, J., concur.