THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRANK GRACA, Defendant-Appellant.

First District (5th Division)   No. 1—87—2999

Opinion filed September 30, 1991.

Randolph N. Stone, Public Defender, and Rita Fry, both of Chicago (Frederick Weil and Vicki Rogers, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Michael J. Monaco, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNULTY delivered the opinion of the court:

Following a jury trial, defendant Frank Graca was found guilty of attempted murder, armed violence, aggravated battery by use of a deadly weapon and battery based on great bodily harm. He was sentenced to a term of six years to be served concurrently for attempted murder and armed violence.

The record sets forth the following facts. On August 23, 1986, Frank Graca was at Mr. Charley's Tavern on 63rd Street. Roy Wokosin and his roommate, Ray Drish, arrived at Mr. Charley's at approximately 2 a.m. Roy Wokosin had been barred from Mr. Charley's because of a prior verbal altercation with the manager. Drish, an employee of the tavern, went in to talk to the manager in an effort to get Wokosin readmitted to the bar.

Wokosin testified that as he waited outside, he heard Graca make a comment to Drish about Wokosin. Wokosin testified that defendant said "and there's that faggot." Wokosin responded, "You're not talking to me, calling me a faggot." A verbal argument then ensued, and both men exchanged insults characterized by vulgar language. When Drish emerged from the bar approximately 25 minutes later, Wokosin and defendant were still in the midst of their argument. Sometime thereafter, Wokosin walked on to the street and challenged Graca to a fist fight. Defendant did not enter the street, but the argument continued. There is conflicting testimony as to what happened from this point on. According to Wokosin, defendant then commented that he was going to get his gun. Defendant, however, testified that he went inside the bar at the owner's request to wait until Wokosin and Drish left. When he exited the bar, the argument continued. Two friends of Wokosin and Drish, Diane Penchak and Cathy Sheldon, walked out of the bar at about this time. Penchak testified that defendant said to her, "Your boyfriend over there, he's a fag and I've got proof" and "I'm going to pop him." She testified that two men bet defendant $50 that he wouldn't "pop" him, and defendant replied, "Well, I'm going to go home and get my gun."

Shortly thereafter, defendant was escorted by one of Mr. Charley's bouncers and a patron of the bar to his truck. Wokosin followed defendant and his two escorts as Drish got into his truck and drove away. Drish left to follow defendant and Wokosin. Penchak and Sheldon then got into Penchak's car and followed Drish. They met up with Drish near defendant's home and waited for defendant to arrive.

There is conflicting testimony as to what happened next. Wokosin and Penchak testified that they went to defendant's house to talk to defendant. Penchak testified that after defendant arrived home from the bar, defendant told her, "I don't care if I spend the rest of my life in jail, I'm going to shoot that faggot." She testified that she saw a gun in defendant's hand when he made that statement. Wokosin testified that defendant pulled out a gun from his waist area and started walking toward Wokosin. Wokosin then said, "Hey Frank, what's going on? What's the deal? I'm on your neighbor's property. I mean, you are not going to shoot me?" When defendant did not respond, Wokosin then began to back up. Defendant kept walking straight toward Wokosin and shot him in the stomach.

Defendant testified to a different scenario. Defendant claimed that after he arrived home from the bar, he went into his house and retrieved his .22 revolver for protection. He then went to his father's house two blocks away and told his father that some guys were after him, that they were at his house looking for trouble and to call the police for him, because if they came after him, he was going to shoot them. Defendant then returned home, and upon exiting the truck, saw Wokosin in his gangway. He testified that Wokosin then came after him. Defendant told Wokosin that he had a gun, but Wokosin said that he didn't care. Defendant pointed the gun at Wokosin and told him to leave him alone and that if he didn't stop he would shoot, to which Wokosin replied, "Not unless I get you first." Defendant testified that he then saw Wokosin reach behind himself, at which point defendant pulled the trigger once, shooting Wokosin in the stomach.

On appeal, defendant contends that (1) the State failed to prove beyond a reasonable doubt that he did not act in self-defense when he shot Roy Wokosin; (2) improper comments made during opening and closing statements by the prosecutor deprived him of a fair trial; (3) he was improperly prevented from introducing evidence as to the reputation of the victim's violent character and nature; and (4) his convictions for aggravated battery and armed violence were improper since they are lesser included offenses of attempted murder.

Defendant first maintains that the State failed to prove beyond a reasonable doubt that he did not act in self-defense when he shot Roy

Wokosin. Once the defendant raises the affirmative defense of self-defense and presents some evidence, the State has the burden of proving beyond a reasonable doubt that defendant did not act in self-defense. (*People v. Evans* (1982), 104 Ill. App. 3d 598, 432 N.E.2d 1285.) Whether an act was justified under the law of self-defense is for the trier of fact and depends on all of the surrounding facts and circumstances. (*People v. Woods* (1980), 81 Ill. 2d 537, 410 N.E.2d 866.) A decision as to whether a defendant acted in self-defense will not be disturbed on review unless it is so improbable or unsatisfactory that it raises a reasonable doubt of defendant's guilt. *People v. Balfour* (1986), 148 Ill. App. 3d 215, 498 N.E.2d 547.

Defendant maintains that the weight of the evidence clearly shows that he reasonably believed he was in imminent danger of receiving great bodily harm given the fact that he had just had a confrontation with Wokosin and Drish at the bar, Drish and Wokosin then followed him home and Wokosin approached him at the gangway of his house. Defendant cites *People v. Honey* (1966), 69 Ill. App. 2d 429, 217 N.E.2d 371, and *People v. Reeves* (1977), 47 Ill. App. 3d 406, 362 N.E.2d 9, in support of his argument. These cases can be easily distinguished from the case at bar. In *Honey*, the court found that the defendant reasonably believed the use of force was necessary to defend himself in light of the fact that the defendant and the victim had engaged in a fist fight four days earlier. Likewise, in *Reeves*, a history of violence existed between defendant and the victim. In fact, the defendant in *Reeves* had been beaten so severely on numerous occasions that hospitalization was required.

In the case at bar, defendant and Wokosin had not previously engaged in a physical altercation. We are instead faced with the evidence that the defendant and Wokosin argued in front of Mr. Charley's tavern for over 30 minutes, and no blows were struck. Although threats of fighting were made, the argument remained simply verbal. While Wokosin maintains that conversation was all that he had in mind when he went over to defendant's house, it is reasonable to believe that Wokosin intended to escalate the argument into a physical altercation, especially since Wokosin had previously challenged defendant to a fist fight at the tavern. In addition, we are faced with conflicting testimony as to the events occurring immediately before the shooting, such as whether Wokosin was backing up from defendant when he was shot or whether Wokosin kept coming at defendant despite defendant's pleas for Wokosin to leave him alone. It is the function of the jury to observe the demeanor of the witnesses and judge their credibility. (*People v. Almo* (1985), 108 Ill. 2d 54, 483 N.E.2d

203.) Where the evidence is merely conflicting, a reviewing court will not substitute its judgment for that of the trier of fact. (*People v. Montgomery* (1977), 51 Ill. App. 3d 324, 366 N.E.2d 623.) Accordingly, our review of the record reveals that there was sufficient evidence for the jury to conclude that it was not reasonably necessary for the defendant to shoot Wokosin in order to prevent the threat of great bodily harm. See *People v. Collins* (1989), 187 Ill. App. 3d 531, 543 N.E.2d 572; *People v. Alcazar* (1988), 173 Ill. App. 3d 344, 527 N.E.2d 325.

Defendant next contends that certain remarks made by the prosecutors in their opening and closing statements misstated the law and misinformed the jury on evidence, thereby denying him a fair trial. We initially note that the alleged errors may be waived by defendant's failure to object at trial to the errors or to mention them in his written motion for a new trial. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) The plain error exception to the waiver rule will apply where the accused was deprived of a fair and impartial trial and in criminal cases in which the evidence is closely balanced. (*People v. Eddington* (1984), 129 Ill. App. 3d 745, 473 N.E.2d 103.) We will, therefore, review the alleged errors in order to ascertain whether they so seriously prejudiced the defendant as to deprive him of a fair trial.

Defendant alleges that the prosecutor misstated the evidence in opening statement on two occasions. Defendant first cites the following portion of the opening statement as being unsupported by the testimony at trial:

> "What he (defendant) did is start yelling about his gun. I'm going to go home and get my gun. I'll take care of you I'll get my gun! Over and over again about his gun ***. Because this guy's (defendant) yelling about going to get a gun ***."

Defendant contends that nobody at trial testified that defendant yelled he was going to get his gun, said defendant was going to "take care" of Wokosin or that defendant repeatedly stated that he was going to get his gun. A review of the record demonstrates that while Penchak, Drish and Wokosin each testified that defendant said he would go home and get his gun, they all refer to the same time that it was said. All three witnesses testified that the statement was made just before defendant was escorted to his truck by two men. Both Drish and Penchak testified as to the same conversation occurring just prior to the statement being made. The record is also devoid of any testimony that defendant yelled or repeated the statement that he was going to get his gun. Furthermore, even the State concedes

that there was no exact testimony regarding defendant's statement that he would "take care" of Wokosin. The State argues, nonetheless, that both Drish and Penchak testified that defendant said he was going to "pop" Wokosin and that "take care of someone" or "pop him" mean the same thing, to shoot a person.

Defendant also maintains that the prosecutor misstated evidence by attributing a statement made by defendant to Drish as applying instead to the victim, Wokosin. The prosecutor stated in his opening statement that Graca told Penchak:

"I don't care if I spend the rest of my life in prison, I'm going to shoot that faggot."

On cross-examination, Penchak testified that after Graca made that comment, she told Drish that Graca "wanted to shoot him."

An opening statement in a criminal trial should outline the fact which the prosecutor in good faith expects to prove. (*People v. Foss* (1990), 201 Ill. App. 3d 91, 559 N.E.2d 254.) To include in opening statements matters which are not later proved at trial is improper if it is done with the prosecutor's foreknowledge. (*People v. Coleman* (1989), 187 Ill. App. 3d 541, 543 N.E.2d 555.) However, reversible error occurs only where the impropriety is attributable to the deliberate misconduct of the prosecutor and results in substantial prejudice to the defendant. *People v. Wills* (1987), 153 Ill. App. 3d 328, 505 N.E.2d 754.

■ Although these remarks by the prosecutor may have been improper, we find that the remarks did not "substantially prejudice" the defendant so as to require a new trial. The fact that the prosecutor said that defendant yelled over and over again about going to get his gun does not amount to substantial prejudice, particularly in light of the fact that the testimony shows that defendant did make this statement at least once. Furthermore, while "pop" someone and "take care of" someone may not mean the same thing, we do not find that the use of the term "take care of" was the result of deliberate misconduct by the prosecutor or resulted in substantial prejudice to the defendant. Nor do we find reversible error in the prosecutor's reference to defendant's comment about shooting "that faggot," which defendant claims referred to Drish rather than Wokosin. It is a fundamental principle of trial practice that statements based upon facts in evidence or upon reasonable inferences drawn therefrom are within the scope of proper argument. (*People v. Beier* (1963), 29 Ill. 2d 511, 194 N.E.2d 280.) During cross-examination, defendant admitted that during his verbal argument with Drish and Wokosin outside of Mr. Charley's, he called both Drish and Wokosin "faggots." Thus, when

defendant referred to "that faggot" later in the evening outside of his home, the prosecutor was drawing a reasonable inference that defendant was referring to Wokosin, and not just Drish. We also find significant the fact that before the opening statements were made, the court informed the jury that opening statements were not to be considered as evidence.

■ We next consider whether remarks made by the prosecutor in closing argument deprived defendant of a fair trial. Defendant contends that the prosecutor misstated the law and injected extraneous inflammatory comments into his closing arguments.

It is well established that a prosecutor is given great latitude in closing argument and the propriety of his comments are within the trial court's discretion. (*People v. Morrison* (1985), 137 Ill. App. 3d 171, 484 N.E.2d 329.) In closing argument, the prosecution may base its argument on the evidence presented or reasonable inferences therefrom, respond to comments by defense counsel which clearly invite or provoke response, denounce the activities of defendant and highlight inconsistencies in defendant's argument. (*Morrison*, 137 Ill. App. 3d at 184, 484 N.E.2d at 340.) A statement made during closing argument constituting alleged prejudice to the defendant will be cured when the trial court subsequently instructs the jury that closing arguments are not evidence and that they should disregard any argument not based on the evidence. (*People v. Scott* (1990), 194 Ill. App. 3d 634, 551 N.E.2d 288.) To merit a reversal a prosecutor's improper comments must be of "substantial magnitude" when viewed in the context of the entire record and argument. (*Scott*, 194 Ill. App. 3d at 645, 551 N.E.2d at 295.) If the improper comments did not constitute a material factor in the conviction of the defendant, the verdict will not be disturbed. *Scott*, 194 Ill. App. 3d at 645, 551 N.E.2d at 295.

Defendant maintains that the prosecutor in his closing argument again improperly attributed defendant's statement that he was going "to shoot that faggot" to Wokosin when it actually referred to Drish. As noted above, this argument was properly based on the reasonable inferences drawn from the evidence.

Defendant next claims the following statement made during closing argument was a misstatement of fact:

> "Well, where was he going to look for these guys that had just insulted him *** the reason he went and got a gun is because he intended to pop one of them."

Once again, the prosecutor's statement is based on the evidence and the reasonable inferences created therefrom. While the evidence shows that it was Drish and Wokosin who initially went looking for

defendant, there is also evidence that after defendant saw Drish outside of his home, defendant entered his house to retrieve his gun and then went back outside. Furthermore, there is testimony that just before the shooting, defendant said that, "I don't care if I spend the rest of my life in jail, I'm going to shoot that faggot."

Defendant next contends that the following statements during the State's closing arguments were not supported by the evidence:

"You heard him say, 'I thought he had a gun in the bar.' The defendant told you that from the witness stand ***. I thought the other guy had a gun. *** But this guy said, he would have had bulges in his pants he would have had something in his belt ***."

The record does, however, reveal testimony sufficient to support the prosecutor's statement. For example, when the prosecutor questioned defendant about the argument at the bar, the following exchange occurred:

"Q. By fighting him, he wanted to work it out with his fists, didn't he?

A. I don't believe so, no.

Q. Roy didn't have any weapons on him that you could see, did he?

A. That doesn't mean he didn't have any weapons."

Moreover, defendant testified that he believed Wokosin had a gun when he approached him on the gangway. Defendant also testified that he had known Drish to carry a weapon.

Defendant next alleges prosecutorial misconduct in the prosecutor's statement:

"Did ever you hear the neighbors (the Dresdons) call the police? They hear a shot, four o'clock in the morning. They see these people, they call the police? No."

The State contends that the prosecutor's statement was reasonable in that the failure of the Dresdons to call the police directly speaks to their credibility. The credibility of witnesses is a proper subject for closing argument if it is based on the facts in the record or inferences drawn from those facts. (*People v. Flores* (1989), 128 Ill. 2d 66, 538 N.E.2d 481.) As the defendant correctly points out, however, the neighbors were never questioned as to whether or not they called the police. Nevertheless, even if this remark by the prosecutor was improper, we do not find that that comment constitutes a material factor in defendant's conviction.

Defendant next claims that the following statement made by the prosecutor during closing argument was not based on the evidence:

"But that is why Mr. Drish wanted to go talk to this guy, he wanted to save his job."

Drish testified:

"They wanted to know why I was there and I said, 'Well, this basically is going to have to end. I really should talk to him, you know I don't want any repercussions at the bar.' "

Accordingly, this statement by the prosecutor was indeed based on the evidence presented at trial.

Defendant next argues that the following statements were made by the prosecutor solely to inflame the jury, were not based on the evidence, and shifted the burden of proof:

"Roy Wokosin is lucky to be alive.
\*\*\*

\*\*\* [I]f he had actually killed him, we would be talking about murder, not attempt.
\*\*\*

I submit to you, when a person takes a gun, points it right at a person, and pull[s] that trigger, knowing that weapon is loaded, that he intends to kill that person. He almost accomplishes his purpose.
\*\*\*

Some of the other stuff the defendant said was to bolster his side of the case to get you to have sympathy for him \*\*\*."

We agree with defendant that it was improper for the prosecutor to state that "Wokosin is lucky to be alive" and that "if [defendant] had actually killed him, we would be talking about murder, not attempt." In *People v. Estes* (1984), 127 Ill. App. 3d 642, 650, 469 N.E.2d 275, the prosecutor made the following comment:

" 'Well, one thing we know and I want you to keep in mind first of all is that Mrs. Estes is not charged with murder.' "

The court agreed with defendant that the prosecutor's irrelevant comment in closing argument was for the obvious purpose of minimizing the significance of finding the defendant guilty to the crime charged. Likewise, the prosecutor's comments in the instant case were made to inform the jury that defendant was lucky not to be charged with murder and therefore defendant would still be getting a break even if he were found guilty of attempted murder. While these comments by the prosecutor were indeed improper, we find that the comments did not constitute a material factor in defendant's conviction.

In contrast, we find nothing improper with the prosecutor's statement that when you aim a gun at somebody, you have an intent to kill, since here the prosecutor is merely stating an opinion based on a

reasonable inference from the evidence. We likewise find no merit to defendant's contention that the prosecutor improperly commented on defendant's attempt to gain sympathy from the jury. The record reveals that the prosecutor's statement regarding defendant's attempt to gain sympathy for his cause constitutes invited comment. (See *People v. Hall* (1989), 192 Ill. App. 3d 819, 549 N.E.2d 681.) Defense counsel stated in his closing argument:

> "Now, he is scared and he is afraid. Some officers coming in, shouting, 'this is going to kill your mother. Your mother is going to die because of this.' "

In addition, we disagree with defendant's contention that the prosecutor left the jury to speculate when he referred to the word "stuff" when commenting on defendant's attempt to gain sympathy. A review of the record demonstrates that the prosecutor did give specific examples of defendant's plea to sympathy right after making his general statement. The prosecutor followed by saying:

> "They told me my mother is going to die, she is going to have a heart attack. Did you hear them ask Detective Ciegelski, did you hear them ask that question ***[?] They didn't give him an opportunity to say, no, that never happened *** because there is a reason why, because none of that was ever said."

Therefore, considering the foregoing portion of the prosecutor's closing argument, it is clear that the prosecutor did mention the "stuff" he had in mind when referring to the attempt by defendant to play on the jury's sympathy.

Defendant next claims the following statements made by the prosecutor in rebuttal unfairly shifted the burden of proof:

> "Might have, maybe (had a gun) isn't good enough to use deadly force.
>
> ***
>
> Did you hear him once give you one fact why he thought he would have a gun?
>
> ***
>
> Did he tell you where he saw the gun? No he did not. Did he tell you when he saw the gun? No, he did not. Did he bring any State firearms owner's identification card in to say that this guy ever went to get a card to be able to purchase a gun? No, he did not. There is nothing here beside the defendant's blatant assertion, his friend had a gun, I thought he could have had a gun.
>
> ***

What evidence is there of that (imminent death or bodily harm)? There is none. There is not one dot of evidence to suggest that this shooting was reasonable."

Defendant contends that these comments unfairly addressed themselves to evidence not introduced by defendant and therefore shifted the burden of proof to him and made it appear as though he was trying to keep unfavorable evidence from the jury. Once the issue of self-defense has been raised, the State has the burden of proving the defendant's guilt beyond a reasonable doubt. (*People v. Ranola* (1987), 153 Ill. App. 3d 92, 505 N.E.2d 1191.) In addition, when some evidence of self-defense is presented by a defendant, the State must disprove the defense beyond a reasonable doubt. (*People v. Colson* (1989), 187 Ill. App. 3d 423, 543 N.E.2d 282.) In other words, the burden is on the State to prove defendant acted unreasonably when he used deadly force. In light of defendant's testimony that he thought Wokosin had a gun, in making the foregoing comments, the prosecutor was merely disputing defendant's belief that deadly force was reasonable under the circumstances, he was not shifting the burden of proof.

Defendant next maintains that the following remarks by the prosecutor were misstatements of law:

"The phrase reasonable belief or reasonably believes means that a person can only use deadly force when you are confronted with a situation wherein your life is in jeopardy, wherein you are confronted with deadly force. This is certainly not the situation wherein a person is entitled to use deadly force.

\*\*\*

It is not reasonable to fire a weapon at an individual who is not using or about to use deadly force against him. There is no indication in this trial that the victim was ever going to use deadly force.

\*\*\*

Only if he reasonably believes such force is necessary to prevent imminent death. Imminent.

\*\*\*

It is not enough to use deadly force in defense of your home, your car, your truck, unless you are being threatened with deadly force."

Defendant contends that these statements of law made by the prosecutor are shaded to favor the State's case and prejudice defendant by overlooking the element of "great bodily harm." It is well established that the use of deadly force in self-defense is justified only where that

deadly force is reasonably necessary to prevent imminent death or great bodily harm to himself or another. (*People v. Balfour* (1986), 148 Ill. App. 3d 215, 498 N.E.2d 547.) Yet none of the prosecutor's statements contain the phrase "great bodily harm." Only phrases "deadly force" and "imminent death" are mentioned by the State. From our review of the record, we find that the prosecutor's statements, although misstating the law of self-defense, were not so prejudicial as to deny defendant a fair trial. The jury was properly instructed on the law of self-defense and further instructed that neither opening nor closing arguments are evidence. Accordingly, any error by the prosecutor's statements was cured by the jury receiving the proper instructions. See *People v. Lawler* (1991), 142 Ill. 2d 548, 568 N.E.2d 895.

Defendant's next contention is that the prosecutor continued to improperly define self-defense with the following statements:

> "You know, if that was the police officer that shot him in the back, that police officer would probably be in an awful lot of trouble, an awful lot. The same standard is applied to the defendant.
>
> \* \* \*
>
> Might have had a gun isn't good enough to use deadly force.
>
> \* \* \*
>
> There is no question as to the intent in this case because self-defense requires him to say I intended to shoot the victim. There is only the question before you ladies and gentleman of the jury of whether or not it was reasonable to believe that the victim had a gun."

We find that these remarks by the prosecutor were not definitions of the law but were instead permissible deductions from the evidence. The comments by the prosecutor merely address the question of whether defendant's use of force was reasonable under the circumstances.

Defendant next argues that the following two statements are improper:

> "Because under the law, I believe mere words are not enough to use force of any kind against somebody just because somebody calls somebody fat, faggot, anything like that. That is not enough to start a fight.
>
> \* \* \*
>
> Somebody calls you up and says I am going to kill your kids. I have got them, they are kidnapped, and we are coming to get you. That is imminent, pending, right there."

Defendant's argument is specious, however, since rather than state why he thinks the foregoing two statements by the prosecutor are improper, he merely states that he disagrees with the prosecutor's characterization of imminent. Once again, the State was merely attempting to persuade the jury based on the evidence and reasonable inferences therefrom.

Defendant also maintains that the State improperly commented on defendant's failure to retreat. Defendant cites *People v. Estes* (1984), 127 Ill. App. 3d 642, 469 N.E.2d 275, for the proposition that a prosecutor should not place the suggestion before the jury that the defendant had a duty to retreat because it is a misstatement of Illinois law and could have substantially influenced the determination of the jury. What defendant cites as the specific instance of the prosecutor stating there was a duty to retreat is the following:

> "I will go home and get my gun. In fact, that is exactly what he did. He went home, got his gun. You saw the gun. He loaded the gun. Did he stay at home then? No, he went back out in his pick up truck."

That statement by the prosecutor did not so blatantly suggest to the jury that there is a duty to retreat so as to have substantially influenced the determination of the jury.

Defendant's final allegation is that the prosecutor implied a fabricated theory of defense. Unless based on some evidence, statements made in closing arguments by the prosecution which suggest that defense counsel fabricated a defense theory, attempted to free his client through trickery or deception, or suborned perjury are improper. (*People v. Emerson* (1983), 97 Ill. 2d 487, 455 N.E.2d 41.) Defendant cites the following statements by the prosecutor as improper in these regards:

> "And then, when he came into court today, he again told you what he thought you should hear. He told you what he thinks will hopefully get him off. He used some magic words, 'I really thought he had a gun, I reasonably believed that.' Did you hear him once give you one fact why he thought he would have a gun?
> \*\*\*
> But the defendant has got these magic words that he is supposed to say.
> \*\*\*
> Now, the fact that a juror [*sic*] of his peers is going to judge him, are you expecting to believe that he is not going to try to

lie now at this last moment to get out from underneath this charge? That is incredible.

\*\*\*

You have been told lies in the case. The reason you have been told lies is because he has to try to worm his way from underneath the reasonable belief. He lied down the line. He lied to you in court today."

■ A prosecutor may challenge the credibility of a defendant and his theory of defense in closing argument when there is evidence which justifies this challenge. (*People v. Muzard* (1991), 210 Ill. App. 3d 200, 569 N.E.2d 26.) In fact, a prosecutor may state his opinion that a defendant is lying provided that the statement is based on the evidence. (*People v. Tiller* (1982), 94 Ill. 2d 303, 447 N.E.2d 174.) The record in this case shows that there were adequate bases for the State to challenge the defendant's credibility. There are instances where defendant's testimony conflicted with that of other witnesses. In addition, defendant admitted that he had lied to the police officer who came to his house to investigate the shooting. The evidence demonstrated that Wokosin was shot with a .22 caliber gun. Yet when defendant was questioned about the ownership of a gun, defendant told the officer that he owned only a .9 millimeter gun. Defendant later retracted that statement and admitted that he did own a .22 caliber handgun and that after the shooting he had hid the gun in a garage owned by a friend. Defendant also lied to the detective investigating the shooting. Defendant initially told the detective that he had had an argument with Wokosin outside of Mr. Charley's but he had not seen Wokosin again after he left the bar. When the detective informed defendant that witnesses had given a different account of the events, defendant told the detective about his confrontation with Wokosin outside of his house. Moreover, at trial, defendant initially denied that he had told his father that he was going to shoot Wokosin and Drish if they came after him. However, after being confronted with his written statement to the police, defendant admitted to the contents of the statement which contained the statement made to his father that he would shoot Wokosin and Drish if they came after him. Accordingly, the prosecutor had ample justification for challenging the defendant's credibility.

Defendant next contends that the trial court erred in not allowing testimony that defendant sought to introduce through one of his own witnesses, Bob Jordan, as to the reputation of Roy Wokosin's violent nature. As the State correctly points out, the defendant's failure to

make an offer of proof regarding the questions to Jordan precludes his claim on review.

The purpose of an offer of proof is to inform the trial court and a court of review of the nature and substance of the evidence sought to be introduced. (*People v. Sanchez* (1989), 131 Ill. 2d 417, 546 N.E.2d 574.) In order to preserve a question for review where the trial court refuses to allow the testimony of a witness to a certain matter, a formal offer of proof is required unless it is apparent that the trial court clearly understood the nature and character of the evidence sought to be introduced. *People v. Montgomery* (1977), 51 Ill. App. 3d 324, 366 N.E.2d 623.

■ The relevant portion of the record contains the following:

"Q. Okay, now during the period of time that Mr. Wokosin has been frequenting Mr. Charley's and up to the date of this incident, did you have any occasion to ever discuss Mr. Wokosin's reputation with anybody?

[PROSECUTOR]: Objection, Your Honor.

[THE WITNESS]: A. Yes, probably.

THE COURT: Sustained.

[DEFENSE COUNSEL]: I will rephrase the question, Your Honor.

Q. During that period of time, and prior to the date of that incident, have you heard, how often have you heard, how often have you heard Mr. Wokosin discussed by people?

[PROSECUTOR]: Objection, Your Honor.

THE COURT: Sustained.

[DEFENSE COUNSEL]: I have nothing further of this witness."

It is undisputed that defendant ceased questioning Jordan without making a formal offer of proof. What is unclear from a review of the two questions posed by defendant to Jordan, however, is exactly what type of reputation evidence defendant sought to elicit. We cannot ascertain whether defendant was seeking to elicit testimony regarding specific acts to establish defendant's character or to establish his reputation. (See *People v. Montgomery* (1977), 51 Ill. App. 3d 324, 366 N.E.2d 623.) Accordingly, defendant's failure to make an offer of proof at trial precludes review of defendant's claim on appeal concerning the victim's violent reputation or character.

■ Lastly, defendant contends that his convictions of aggravated battery based on bodily harm, aggravated battery based on use of a deadly weapon and armed violence are improper since they are lesser included offenses of attempted murder. The State agrees with defend-

230

ant under the authority of *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, where our supreme court held a defendant may not be convicted of multiple offenses which arise from a single act or course of conduct.

Accordingly, we affirm defendant's conviction for attempted murder and vacate defendant's conviction for aggravated battery and armed violence.

Affirmed in part; vacated in part.

LORENZ, P.J., and MURRAY, J., concur.