THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MARIETTA KOVACS, Defendant-Appellant.
Second District   No. 84—1038

Opinion filed July 30, 1985.

G. Joseph Weller and William A. Delaney II, both of State Appellate Defender's Office, of Elgin, for appellant.

Theodore Floro, State's Attorney, of Woodstock (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE NASH delivered the opinion of the court:
After trial by jury defendant, Marietta Kovacs, was convicted of home invasion (Ill. Rev. Stat. 1983, ch. 38, par. 12—11(a)(1)); residential burglary (Ill. Rev. Stat. 1983, ch. 38, par. 19—3(a)); armed violence (Ill. Rev. Stat. 1983, ch. 38, par. 33A—2); criminal damage to property (Ill. Rev. Stat. 1983, ch. 38, par. 21—1(a)); battery (Ill. Rev. Stat. 1983, ch. 38, par. 12—3(a)(1)); and attempted child abduction (Ill. Rev. Stat. 1983, ch. 38, par. 8—4(a)). She was sentenced to concurrent terms of imprisonment of six years each for home invasion and residential burglary and 364 days each for battery and attempt. Defendant was not sentenced for armed violence, which was predicated upon home invasion, or for criminal trespass. She appeals, contending the State failed to prove her to be guilty of home invasion, arguing there was no evidence defendant had used or threatened the imminent use of force on any person within the dwelling.

The evidence at trial disclosed that custody of defendant's daughter, Anna, had been granted to the Illinois Department of Children and Family Services by the circuit court and the child had been placed in a licensed foster home in Wonder Lake, in February 1983, when the child was three weeks old. Mary Ann Regelin, who with her husband operated the home, testified that at 2:45 p.m. on March 15, 1984, she observed defendant cutting the screen of a living room window with a knife; the child Anna was in a playpen in the room. Mrs. Regelin asked defendant to leave, but she continued to cut the screen stating, "[t]his time I'm coming in. This time I'm getting my baby." When defendant said this she was holding the knife in her hand pointing it through the window. Mrs. Regelin testified that defendant then broke the glass of the window and entered the house through it while holding the knife in her hand.

At this point, Mrs. Regelin grabbed Anna from the playpen, and her own three-year old child from the dining room, and ran from the house. Defendant caught up with her at a neighbor's driveway and tried to remove Anna from Mrs. Regelin's arms. Defendant struck Mrs. Regelin knocking her and the baby down upon the neighbor's porch. With the assistance of the neighbors, Mrs. Regelin and the baby were able to get into the house; both she and the baby were scratched and bruised. Defendant ceased her efforts and left the scene.

When defendant was arrested later that day, she was carrying a knife with a 4³/₄-inch blade in her purse. She admitted cutting the screen and breaking the house window, stating she wanted to get her child. Defendant also told the officer she had struck Mrs. Regelin stating, "I should have killed her. I could have, you know."

In trial, defendant testified that she brought the knife to the home in which her child lived in order to cut the screen to get in, as she knew she would not be allowed to enter if she went to the door. Defendant stated she did cut the screen and break the window with the knife handle, but testified that she then put the knife on the ground under the window, as she had no further use for it, before entering the home through the broken window. Defendant denied threatening or intending to threaten Mrs. Regelin or the child with the knife. Defendant stated she followed Mrs. Regelin out of the house and struggled with her attempting to take the child, but testified she merely wished to hold the baby and did not intend to take her away. When the screaming upset defendant, she stopped pulling on the baby and went back to the Regelin house, where she retrieved the knife, and left for a bus stop.

Charles Weech, an investigator for defendant's attorney, testified that in an interview with Mrs. Regelin she stated she saw the knife when defendant was cutting the screen, but did not see it when defendant was in the window, contrary to Regelin's testimony in trial.

While defendant agrees there is evidence she had a knife in her hand while within the Regelin home, she contends there is no evidence that she used force or threatened to do so on any person in the home after making the unlawful entry. Defendant concludes the requirements of the home invasion statute have thus not been met and her conviction for that offense must be reversed.

The statute which provides for the offense of home invasion states, in pertinent part, as follows:

"(a) A person who is not a peace officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present and

(1) While armed with a dangerous weapon uses force or threatens the imminent use of force upon any person or persons within such dwelling place whether or not injury occurs." Ill. Rev. Stat. 1983, ch. 38, par. 12–11.

Defendant argues the unlawful entry of a dwelling place must have occurred first and then there must be a threat of force against a person while within the dwelling place in order to meet the terms of the statute. She postulates the evidence here, at most, shows defendant merely had possession of the knife within the Regelin home and used neither force or threat thereof while in the home. Defendant asserts the statute must be strictly construed, citing *People v. Pettit* (1984), 101 Ill. 2d 309, 461 N.E.2d 991, but essentially relies upon *dicta* in *People v. Snow* (1984), 124 Ill. App. 3d 955, 464 N.E.2d 1262, where this court observed that "home invasion is not complete until, after an unlawful entry, defendant either uses force or threatens use of force upon a person in the home while armed with a dangerous weapon." (124 Ill. App. 3d 955, 963.) The issue under consideration in *Snow*, however, was whether that defendant's convictions for home invasion and residential burglary were based upon the same physical act, thus requiring that one conviction be vacated. We there noted the offense of residential burglary was complete upon an unlawful entry with the requisite intent, while home invasion was not complete until, after an unlawful entry, force was used or threatened upon a person in the dwelling while armed with a dangerous weapon. The court in *Snow* did not address whether or not the requisite threat while armed

may only be made by a defendant after entry of the dwelling to constitute this offense, and that case thus lends only superficial support to defendant's argument.

It is apparent the complete offense of home invasion is comprised of acts and conduct of a defendant both within and without the dwelling place sought to be protected by the statute and it does not require the fine distinction urged by defendant. We find no support in the statute for defendant's argument the threat of force against persons within a dwelling may only occur after the unlawful entry. We think the statute was intended to reach the home invader who, while standing on the porch, may threaten verbally and with a gun a resident who responds to a knock on the door and thus gain entry to the dwelling. Further explicit verbal threats while inside the dwelling, still holding the gun, may be unnecessary for the invader to accomplish his purposes and are not necessary to meet the requirements of the home invasion statute. In that illustrative case, the invader entered the dwelling of another without authority knowing it is occupied by a person and, while armed with a dangerous weapon, threatened the use of force; the elements of the statute are met in such circumstances.

In the present case the evidence is even more clear, as defendant, while armed with a knife, forcibly cut through a screen and broke a glass window and, while doing so, although prior to actual entry, pointed the knife at Mrs. Regelin, stating she was coming in to get the baby. Defendant did not enter through the broken window, still holding the knife in her hand. We consider the threats directed to Mrs. Regelin, both verbally and by gesture with the knife immediately prior to entry of the dwelling, may be considered to meet the requirement of the statute. In addition, defendant's conduct thereafter in entering through the window with the knife in hand also constituted a clear threat to the persons therein.

We conclude the evidence was sufficient to establish defendant's guilt of home invasion. In view of the resolution of this issue, we need not consider other arguments of the parties.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

HOPF and SCHNAKE, JJ., concur.