THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ANDREW ADER, Defendant-Appellant.

Second District   No. 2—87—0305

Opinion filed November 23, 1988.—Rehearing denied December 28, 1988.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and
Michael J. Pelletier and Ann C. McCallister, both of State Appellate De-
fender's Office, of Chicago, for appellant.

James E. Ryan, State's Attorney, of Wheaton, and Ronald S. Shapiro, of Northbrook (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Andrew Ader, was indicted in the circuit court of Du Page County for the offense of home invasion (Ill. Rev. Stat. 1985, ch. 38, par. 12—11). He was found guilty of that offense by a jury, and the trial judge sentenced him to six years' imprisonment.

On appeal, he raises these two issues: (1) whether he was proved guilty of home invasion since the State failed to prove that he threatened the imminent use of force upon a person in the dwelling; and (2) whether he was denied a fair trial when his post-arrest statement that he wanted to kill complainant's daughter was admitted in evidence.

The defendant, who was 20 years old at the time of the occurrence, was keeping company with Andrea Tsigaras. On July 7, 1986, he went to her house at 7 a.m. and spoke to her using "foul language" in a "harsh" tone according to Andrea's mother, Elaine Tsigaras, who overheard part of the conversation. Defendant left. Sometime later Elaine drove Andrea and her sister to school and work and then returned home. Elaine testified that a few minutes after her return she heard a loud rattling sound at her front door. She ran downstairs. She saw the defendant behind the screen door. He raised his arm up fast, and he kicked in the panel from the screen door, and it fell inside. The defendant stepped over the door into the foyer. He brandished a knife in his hand. Elaine Tsigaras testified she was standing in the foyer by the stairway. The defendant walked into the foyer and said: "Where's Andrea?" The defendant was holding the knife in his right hand, and the blade of the knife was open. Elaine Tsigaras told the defendant that Andrea was not there. He did not point the knife at her; he held it in front of himself. Over objection she testified that she felt frightened, threatened.

The defendant ran downstairs where Andrea's bedroom was. Elaine Tsigaras testified that she looked downstairs and saw the defendant raise his foot and kick in her door and he screamed "Andrea." He had his right arm raised. She had not given him permission to be in the home that day.

She ran to the kitchen and located a little steak knife. She ran out the back door and to a neighbor's, where they called the police. Over objection she testified she was frightened and terrified. After the police arrived she returned to her home. She testified that the screen door was slashed. There was blood on the floor. She went to Andrea's

bedroom. A lamp was smashed. A mirror was broken. Wedges of glass were embedded in the wall. The dresser had been carved with the names Andrea and Andy. There were knife marks on top of the dresser and on the closet doors. The clock was broken. Prior to defendant's entry, that room had been in perfect condition.

The witness described the defendant when he entered her house as having glazed eyes, a menacing appearance with a certain wildness of facial features.

On cross-examination, Elaine Tsigaras testified that the defendant was her daughter's boyfriend, who had stayed at the house overnight on numerous occasions. He had received mail at her house; the young people had purchased a car together, and the address on the title was the Tsigaras residence. Andrea and the defendant had broken up two weeks before the occurrence.

Sometime subsequent to the occurrence, Elaine Tsigaras had a telephone conversation with the mother of the defendant. Elaine told that woman the defendant did not threaten her.

Nicholas Tsigaras, Andrea's younger brother, was in the house at the time of the occurrence. He saw the defendant come down to the lower level of the house and kick in the door to Andrea's bedroom. Nicholas heard the defendant shout Andrea's name. Nicholas went upstairs to the bathroom and locked the door. He heard smashing sounds.

Detective Michael Prunty of the Du Page sheriff's police testified he took a post-occurrence statement from the defendant in which the defendant said that he went to Andrea Tsigaras' home to kill her. The defense objected to this testimony. The trial court overruled the objection, stating that the evidence "goes to prove entry into the home, circumstances of entry into the home."

The defense contends that the defendant was not proved guilty of home invasion since the State failed to prove that he threatened imminent use of force upon a person in the dwelling where Elaine Tsigaras testified that the defendant did not point his knife at her and did not verbally or physically threaten her.

The statute which provides for the offense of home invasion states in pertinent part as follows:

"(a) A person who is not a police officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present and

(1) While armed with a dangerous weapon uses force or

threatens the imminent use of force upon any person or persons within such dwelling place whether or not injury occurs ***." Ill. Rev. Stat. 1985, ch. 38, par. 12–11.

The defense reads the statute as requiring that the threatened use of force be imminent and that it be focused upon a person inside the dwelling. The defense argues that the defendant virtually ignored Elaine Tsigaras and that he did not threaten her with imminent force. He did not focus attention on Mrs. Tsigaras except to ask her daughter's whereabouts. The defense points out that the defendant ran past Mrs. Tsigaras and was focused on a course of conduct that targeted property in the Tsigaras home and not on Mrs. Tsigaras. The defense notes that although the defendant had a knife in this hand, he did not point it at Mrs. Tsigaras, and that sometime later she told the defendant's mother that she was not verbally or physically threatened by him.

The defense argues that the State, thus, did not prove an element required by the statute, that is, that the defendant threatened the imminent use of force upon any person in the Tsigaras home. The defendant distinguishes the case of *People v. Kovacs* (1985), 135 Ill. App. 3d 448, from the case at hand, because, unlike the defendant in *Kovacs* who pointed a knife at a person in the dwelling, the defendant in the case at hand did not point the knife at an occupant of the home he invaded.

■■ The gravamen of the offense of home invasion is unauthorized entry. *People v. Fox* (1983), 114 Ill. App. 3d 593.

We think the defendant's reliance on our decision in *People v. Kovacs* (1985), 135 Ill. App. 3d 448, is misplaced. In that case we affirmed the conviction of the defendant therein and rejected the argument that the evidence failed to prove the use of force or threatened use of force on any person in the home. As we stated in *Kovacs*, "defendant's conduct thereafter in entering through the window with the knife in hand also constituted a clear threat to the persons therein." 135 Ill. App. 3d at 451.

■ Here, the defendant's conduct in slashing the screen and kicking in the front door and entering the foyer with a raised knife clearly threatened those inside the house. The fact that the person he sought to harm was not present does not absolve him of responsibility for violation of the home invasion statute, for others were present and under the facts presented were clearly threatened.

Mrs. Tsigaras' actions in fleeing to obtain a knife, and then seeking refuge in a neighbor's house, describe more fully the threatening nature of the assault better than her oral description of her mental

state.

The State clearly proved the elements of the offense of home invasion.

Defendant next contends that the trial court denied the defendant a fair trial when it admitted evidence that after his arrest the defendant said he had wanted to kill Andrea Tsigaras. The defense asserts the prejudicial effect of this evidence far outweighed any probative value it had on the issue of unauthorized entry where prior testimony clearly established that defendant's entry was unauthorized.

Prior to trial the court denied defendant's motion *in limine* to preclude any testimony concerning defendant's actions and remarks about Andrea Tsigaras. The court ruled that the evidence was "part of an overall transaction" and was admissible to show that the defendant entered the Tsigaras residence without authority.

The defendant argues that the fact of unauthorized entry had already been established by showing defendant's forced entry, citing *People v. Brown* (1986), 150 Ill. App. 3d 535. Since his unauthorized entry was no longer at issue, the admission of testimony that he wanted to kill Andrea Tsigaras deprived him of a fair trial, he asserts. This is particularly so because he was not charged with an offense against Andrea. He argues that the court's decision to admit this testimony burdened him with the risk that the jury would infer that he was of bad character and, therefore, probably committed the home invasion. *People v. Hall* (1982), 104 Ill. App. 3d 1064.

■ Generally, evidence that a defendant has committed an offense which is separate and distinct from the offense for which he is being tried is not admissible because of its prejudice. (*People v. Hall* (1982), 104 Ill. App. 3d 1064, 1069.) However, evidence of an "other crime" is admissible, if relevant, to prove a material fact if the probative value of such evidence outweighs its prejudicial effect. *People v. Tuczynski* (1978), 62 Ill. App. 3d 644, 651.

■ It is the function of the trial judge to exercise his discretion to weigh the probative value and potential effect of evidence. (*People v. Greer* (1980), 79 Ill. 2d 103, 117.) Evidence which is otherwise relevant will not be excluded merely because it may prejudice the accused. (*People v. Rachel* (1984), 123 Ill. App. 3d 600, 605.) The trial judge's decision will not be reversed absent an abuse of discretion. (*People v. Williams* (1983), 97 Ill. 2d 252, 291.) The major bulwark against prejudicing the jury is the sound discretion of the trial judge. *People v. Foster* (1979), 76 Ill. 2d 365.

■ We believe the objected-to statements of the defendant were relevant to prove the issue of unauthorized entry. Particularly in view

of the fact that the defendant had been in the home on numerous occasions during his courtship of Andrea Tsigaras, it was important to establish that his entry on this occasion was unauthorized. The learned and experienced trial judge balanced the probativeness of this evidence against its prejudicial effect and determined that it should be admitted. We are not prepared to say he abused his discretion in this regard such as to deny the defendant a fair trial.

The judgment of the circuit court of Du Page County is therefore affirmed.

Affirmed.

NASH and INGLIS, JJ., concur.