2020 IL App (2d) 180961-U
No. 2-18-0961
Order filed December 16, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Nos. 14-CF-113 14-CM-307 |
| RICHARD GONZALES, | ) ) ) | Honorable Robert P. Pilmer, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Presiding Justice Bridges and Justice Hutchinson concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant was proved guilty of home invasion based on evidence that he entered the victims' home and struck them with a baseball bat; his sentence of 10 years' imprisonment, four years above the minimum for a Class X felony, was not an abuse of discretion given the nature of the crime, the elderly age of the victims, and defendant's criminal history.

¶ 2    Following a bench trial, defendant, Richard Gonzales, was convicted of home invasion (720 ILCS 5/19-6(a)(1) (West 2014)) and sentenced to 10 years' imprisonment. He appeals, contending that (1) he was not proved guilty beyond a reasonable doubt and (2) his sentence was

excessive and based on an improper consideration of aggravating and mitigating factors. We disagree and affirm.

¶ 3                                    I. BACKGROUND

¶ 4     At trial, Lydia Edwards testified that she and her late husband, Roger, had rented a small home in Oswego. She had met defendant when he was looking for a home to rent in the neighborhood. Roger told defendant that he knew the owner of the house next door and would "put in a good word for him."

¶ 5     On April 18, 2014, she and Roger watched Wheel of Fortune at 6:30 p.m. and, when it ended, she went to the living room to call her sister. While she was in the living room, she heard the dogs barking. Roger yelled, " 'Call 911,' " so she went to the kitchen to see what was happening.

¶ 6     As Lydia entered the kitchen, she could see Roger on the floor of the mud room with defendant standing over him with a baseball bat. She saw defendant strike Roger in the face. She said, " 'I'm going to get you out of my house.' " Defendant struck her lightly with the bat. She pushed defendant, continuing to say that she wanted him out of the house. Defendant said that he was "going to come back and kill [her] family."

¶ 7     Defendant finally left and Lydia called 911. In court, Lydia described the bat as wooden with a white film on it.

¶ 8     Paramedic Matthew Goodbred testified that he was dispatched to the Edwards' home. After the police secured the scene, he entered the house and observed Roger with cuts on his face. Roger told him that he heard a knock on the door and when he answered he was hit with a baseball bat. Roger said that he had been drinking all day, but Goodbred found him to be coherent, aware

of his surroundings, and able to carry on a clear conversation. He was capable of forming coherent thoughts. During the ride to the hospital, Roger talked at length about his experiences in the war.

¶ 9    Officer Ken Foote testified that he, too, was dispatched to the Edwards's home. Lydia identified the assailant as defendant, whom Foote recognized from previous contacts. Foote then went to defendant's place of business at 29 Stonehill Road to interview him. While he was there, another officer arrived with Lydia, who positively identified defendant as the man who assaulted her and her husband.

¶ 10    Foote knew that defendant drove a white Ford Explorer with a "Phoenix Auto Body" logo on it. With defendant's permission, he searched the Explorer and found a baseball bat. The bat was made of aluminum with silver toward the handle and large red letters down its entire length.

¶ 11    Foote returned to the Edwards's residence to create a sketch of the house. He observed that the mudroom was a small, crowded space with the porch door swinging into the room.

¶ 12    Officer Frank Sterioti testified that he collected the bat from defendant's truck and later placed defendant under arrest. He said that he had originally been dispatched to 29 Stonehill Road on a report of a man with a knife but was diverted to assist Foote at the Edwards's home.

¶ 13    The bat was tested for DNA. Defendant's DNA, but not Roger's, was found on it.

¶ 14    Defendant testified that he used to rent a home down the street from the Edwardses but no longer lived there due to an infestation. Roger was the caretaker for several properties, including defendant's. About 7 p.m. on April 18, 2014, a man defendant recognized as Roger's helper came into defendant's business with a large knife and threatened him. He accused defendant of putting Roger and the landlord in a bad position because he had moved out of the house.

¶ 15    Defendant called the police on the nonemergency number. The person who answered said, " '[W]hat do you want us to do about it?' " Defendant then followed Roger's helper to the

Edwards's house, where he got into a heated argument with Roger. Roger said that defendant had agreed to paint his car for free but had backed out of the deal. At some point, Roger walked into the door, knocking himself down. He had a cut on his face. Defendant continued to stand on the porch calling Roger names until his wife appeared and said that defendant was going to jail.

¶ 16 Defendant said that he was familiar with the Edwards's mudroom and that it would be impossible for someone defendant's size to wield a baseball bat without hitting the walls or the ceiling. Defendant had an artificial hip that made it impossible to wield a bat in the manner described. He admitted owning a bat but denied striking Roger or Lydia with it. On cross-examination, defendant admitted that he called 911 after he left the Edwards's house.

¶ 17 The court found Lydia credible and defendant not credible. Accordingly, the court found defendant guilty of five counts of home invasion as well as misdemeanor battery. The court denied defendant's motion for a new trial.

¶ 18 At sentencing, the State presented evidence of a previous incident in which defendant became angry after being involved in a traffic accident and intentionally backed his car into the other vehicle. Dawn Duff, defendant's ex-wife, testified that he frequently threw things at her during their relationship. He was convicted of aggravated domestic battery against her and sentenced to prison.

¶ 19 In mitigation, defendant presented a letter from Gregory Hologa, a program director at Sheridan Correctional Center. Hologa wrote that defendant had completed a plumbing course and volunteered for programs and charity projects. Hologa highly recommended defendant for employment. Defendant showed that he had enrolled in an alcohol rehabilitation program. He apologized for his behavior but maintained his innocence.

¶ 20    The trial court sentenced defendant to 10 years in prison to be served consecutively to his sentence in an unrelated case. The court found that several aggravating factors applied, including that defendant had a criminal history and that his conduct "caused or threatened serious harm." The court denied defendant's motion to reconsider the sentence and defendant timely appeals.

¶ 21                                  II. ANALYSIS

¶ 22    Defendant first contends that he was not proved guilty beyond a reasonable doubt. Defendant challenges the evidence in several respects. He argues that Lydia inconsistently described the incident in several respects, including the number of times Roger was struck, whether he was hit with a bat or punched, and whether defendant subsequently threatened the couple. Defendant further contends that Roger admitted drinking all day, calling into question his account of the incident to police and paramedics. Moreover, the Edwardses suffered relatively minor injuries, making it unlikely that they were viciously attacked with a baseball bat. Finally, defendant notes the small size and cluttered nature of the Edwards's mudroom which, he claims, would have made it impossible for him to swing a baseball bat inside it.

¶ 23    When a defendant claims that the evidence of his guilt was insufficient, we ask only " 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.' " *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *Jackson v. Virginia,* 443 U.S. 307, 318 (1979)). In doing so, we must not retry the defendant. *Id.* at 279.

¶ 24    Defendant was convicted of home invasion. As relevant here, a defendant commits that offense when he or she "without authority *** knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present" and "[i]ntentionally causes any injury *** to any person or persons within the dwelling place" (720 ILCS 5/19-6(a)(2) (West 2014)) or "[w]hile armed with a dangerous weapon *** threatens the

- 5 -

imminent use of force upon any person or persons within the dwelling place whether or not injury occurs" (720 ILCS 5/19-6(a)(1) (West 2014)).

¶ 25 Defendant lists several reasons why he believes that the State's evidence was insufficient. He first argues that Lydia gave varying accounts of the incident. Many of the alleged inconsistencies occurred in the course of her 911 call, which was played for the court. The court could reasonably find that Lydia was upset after she and her husband were attacked in their home and was more concerned about getting help for her stricken husband than in narrating details of the incident.

¶ 26 Defendant also contends that Lydia's trial testimony was internally inconsistent. At trial, Lydia testified that she heard her husband call for help. She went into the kitchen and saw her husband on the mudroom floor and defendant standing in front of him with a bat. She then saw defendant strike Roger with the bat. When she told defendant that she was going to get him out of the house, he struck her with the bat as well. Defendant left but threatened to return and kill her family. Thus, she testified to the elements of each count of home invasion as well as battery. Testimony may be found insufficient under the *Jackson* standard, but only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt. *Id.* at 278. Generally, the testimony of a single witness, if positive and credible, insufficient to convict. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). A reviewing court will not reverse a conviction simply because the evidence is contradictory or because the defendant claims that a witness was not credible. *Id.* Any inconsistencies in the evidence were for the trial of fact to resolve. The court, as the trier of fact, considered these points but still found Lydia credible.

¶ 27 Defendant next contends that the physical dimensions of the mudroom would have made it impossible for defendant "to have entered the home and to have struck Roger in the manner

described by Lydia (i.e. with the bat over his head and swinging it downwards on to [*sic*] Roger, who was on the ground)." However, Lydia never testified that defendant swung the bat from above his head. On cross-examination, the following exchange occurred:

"Q. So Mr. Gonzales had his hand above his—

A. He had the bat ready to hit him and my husband was on the floor.

Q. And in your words, Mr. Gonzales was ready to hit your husband, correct?

A. Well, I seen him hit him.

Q. So Mr. Gonzales has his hand above his head—

A. He was in the process of doing it. As I walked through there, I could see him hit him.

* * *

Q. Okay. So when Mr. Gonzales had his hand above his head with the baseball bat—

A. He was already going down to strike him."

¶ 28 Only defense counsel's questioning referenced that defendant held the bat above his head. Lydia seemingly testified that defendant was already lowering the bat toward her husband when she first saw him. In any event, as the State points out, defendant could have used the bat as a weapon without holding it as a baseball player would, at the end of the handle and with full arm extension. Defendant could have used the bat effectively as a weapon by holding it near the barrel and without fully extending his arms. The trial court specifically considered this contention and found that nothing about the room "would have prevented the events from occurring as was testified to by Miss Edwards."

¶ 29    Defendant further contends that the relatively minor injuries suffered by Roger and Lydia were inconsistent with having been attacked with a baseball bat.  Causing a severe injury is not an element of home invasion.  Here, the court could reasonably have found that defendant's primary purpose was to threaten or intimidate the Edwardses rather than to severely injure them.

¶ 30    Defendant contends that evidence that Roger admitted drinking all during the day of the incident casts doubt on his description of the incident to police and paramedics.  However, Goodbred, a paramedic, found that Roger was coherent and able to carry on a conversation.  There was no evidence that Roger was intoxicated to the point of being unable to communicate effectively.

¶ 31    Defendant also cites the lack of Roger's DNA on the bat recovered from defendant's vehicle.  However, defendant could have wiped off the bat before the police located it or the evidence could simply have degraded in the intervening time.  " [T]he absence of a victim's DNA on a perpetrator or his property does not mean there was no contact between the two.' " *People v. Dodds*, 344 Ill. App. 3d 513, 518 n.2 (2003) (quoting Anna Franceschelli, Commentary, *Motions for Postconviction DNA Testing: Determining the Standard of Proof Necessary in Granting Requests*, 31 Cap. U. L. Rev. 243, 264 (2003)).  Thus this fact alone does not mean that the evidence was insufficient.

¶ 32    Defendant's final contention concerning the sufficiency of the evidence is that his alleged threat to "come back and kill" Lydia's family was not a threat of "the imminent use of force" required by the home invasion statute.  In *People v. Ader*, 176 Ill. App. 3d 613, 616 (1988), we noted that the gravamen of the offense of home invasion is an unauthorized entry.  We held that the mere entry into a home while armed with a dangerous weapon threatened those inside the home.  *Id.*  Thus, the State sufficiently proved that defendant threatened harm to the Edwardses.

¶ 33    Thus, although the relevant counts of the indictment allege that defendant "threatened the imminent use of force *** in that said defendant threatened to kill the victim and the victim's family," the reference to the verbal threat can arguably be disregarded as surplusage.  See *People v. Figgers*, 23 Ill. 2d 516, 519 (1962) (where an indictment charges all essential elements of an offense, other matters unnecessarily added may be rejected as surplusage).  But even if the State had to prove that the verbal threat constituted the threat of harm, we note that "imminent" does not mean "immediate."  "Imminent" means "ready to take place; *esp.*: hanging threateningly over one's head."  Merriam-Webster's Collegiate Dictionary 579 (10 ed. 2001).  The threat to return and kill their family was thus "hanging over the head" of each victim.  Defendant cites boilerplate definitions of "imminent" from cases involving different offenses, which do not persuade us that a different result is warranted here.  In summary, we find that the State's evidence amply supported the trial court's findings.

¶ 34    Defendant next contends that the 10-year sentence was an abuse of discretion.  The trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference.  *People v. Alexander*, 239 Ill. 2d 205, 212-13 (2010).  The trial court has a superior opportunity to weigh such factors as a defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age.  *Id.* at 213.  Consequently, we must not substitute our judgment for that of the trial court merely because we might have weighed these factors differently.  *Id.*  Accordingly, we may not alter a defendant's sentence absent an abuse of discretion by the trial court.  *Id.*

¶ 35    Here, the trial court stated that it had carefully considered the factors in aggravation and mitigation before imposing the 10-year sentence, which was in the lower end of the 6-to-30-year

range defendant faced. 720 ILCS 5/19-6(a)(2), (c) (West 2014); 730 ILCS 5/5-4.5-25(a) (West 2014).

¶ 36    Defendant contends that the trial court did not adequately consider the mitigating factor that he acted under a strong provocation. See 730 ILCS 5/5-5-3.1(a)(3) (West 2014). Defendant contends that he went to the Edwards' home because he was angry and confused after being threatened by Roger's assistant. However, virtually the only support for this assertion was defendant's own testimony, which the trial court did not credit. While Sterioti did state that he had originally been dispatched to a report of a man with a knife, this vague testimony does not support the conclusion that defendant's conduct in breaking into a home and then striking and threatening the elderly residents was mitigated by a strong provocation.

¶ 37    Defendant also argues that the trial court erred by considering as an aggravating factor that defendant's conduct caused serious harm (730 ILCS 5/5-5-3.2(a)(1) (West 2014)), as causing injury is an element of home invasion (720 ILCS 5/19-6(a)(2) (West 2014)). In sentencing defendant, the court stated that it wished to "highlight some of the things which I have considered in coming to" its decision, including that "the defendant's conduct caused or threatened serious harm [and] the defendant has a history of prior criminal activity." The court did not further elaborate on those factors.

¶ 38    Here, however, defendant was sentenced only on count II, which charged him under subsection (a)(1). That subsection requires the State to prove that defendant "use[d] force or threaten[ed] the imminent use of force." *Id.* ¶ 19-6(a)(1). Causing an injury is not an element of the offense as defined in that subsection. Thus, by referring to the victims' injuries, the court was not considering a factor inherent in the offense for which defendant was sentenced.

¶ 39 Overall, the sentence was not an abuse of discretion. In addition to the victims' injuries, the trial court also referenced defendant's prior convictions. He had an aggravated domestic battery conviction as well as misdemeanor convictions of resisting an officer and simple battery. Further, as the State pointed out at oral argument, both victims were over 60 years old. Roger Edwards was 72 and died of cancer before trial. Although the trial court did not specifically mention it, one aggravating factor is that the victim was more than 60 years old. See 730 ILCS/5-5-3.2(a)(8) (West 2014). Defendant had been the victims' neighbor and must have been aware of their age. Despite these factors, defendant's sentence was only four years above the statutory minimum of six years for a Class X felony. 720 ILCS 5/19-6(c) (West 2014); 730 ILCS 5/5-4.5-25 (West 2014).

¶ 40 III. CONCLUSION

¶ 41 The judgment of the circuit court of Kendall County is affirmed.

¶ 42 Affirmed.