2021 IL App (2d) 180722-U
No. 2-18-0722
Order filed August 20, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Kendall County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 15-CF-180 |
| | ) | |
| ZACHARY BARTHEL, | ) ) | Honorable Timothy J. McCann, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ZENOFF delivered the judgment of the court.
Justices McLaren and Hutchinson concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's contentions in five of the six sections of his brief were forfeited for failure to comply with a variety of Illinois Supreme Court Rules. However, the court reached the merits in section three of defendant's brief and concluded that the State proved defendant guilty beyond a reasonable doubt of home invasion on an accountability theory.

¶ 2    Following a jury trial, defendant, Zachary Barthel, was convicted of one count of home invasion (720 ILCS 5/19-6(a)(3) (West 2014)) and one count of residential burglary (720 ILCS 5/19-3(a) (West 2014)), both on an accountability theory. The court sentenced defendant to concurrent terms of imprisonment of 23 years for home invasion and 10 years for residential

burglary. On appeal, defendant's appointed attorney withdrew, so defendant filed a brief *pro se*. We affirm.

¶ 3                                   I. BACKGROUND

¶ 4     The following facts were established at trial. Defendant and Marco Ortega had been friends for approximately nine years, and defendant had been to Ortega's house many times. In 2015, defendant accused Ortega of breaking into defendant's home and stealing a safe. Thereafter, defendant and Ortega had a falling out and stopped communicating. Defendant designed a plan to retrieve the safe from Ortega's home while Ortega was present. Defendant asked his girlfriend, Ranae Earnest, to drive by Ortega's house and look for Ortega's car. Defendant even discussed installing a tracking device on Ortega's car. Defendant did not want to enter Ortega's house himself, because Ortega might recognize him. Therefore, defendant was going to need assistance, which Thomas Gallagher, Cory Gorges, and Kathryn Fyfe ultimately provided.[1]

¶ 5     Gorges procured two guns and a box of ammunition. Then Gorges drove Gallagher and Fyfe to defendant's residence in Naperville. Defendant explained to his cohorts that he had been robbed and that a safe containing money was stolen. Defendant wanted to retrieve that safe. Defendant drew a layout of Ortega's house on a napkin. He indicated that a door on the house's attached garage would be unlocked. The safe was black and it would be sitting on the floor in a back bedroom. Gorges and Gallagher would enter the house and defendant would wait in Gorges' Dodge Durango. Defendant did not want Ortega to recognize him.

¶ 6     At around 3 p.m. on June 12, 2015, Gorges drove the foursome to Ortega's neighborhood. Defendant pointed out Ortega's house. Because Ortega's car was in the driveway, defendant said,

_____

[1] Gorges and Fyfe both testified at trial pursuant to plea agreements.

"[h]e's the only one home." Gorges drove around the block and parked. Gallagher and Gorges donned gloves, hooded sweatshirts, and face coverings. Fyfe got in the driver's seat and drove the foursome back toward Ortega's home. Gallagher and Gorges exited the Durango with their loaded firearms displayed. They ran toward Ortega's home and entered the garage. Fyfe drove off with defendant in the back seat and parked about a block away.

¶ 7 Inside of Ortega's garage, Gallagher cocked both guns. Then Gallagher and Gorges entered Ortega's home, with the firearms drawn. While they walked down the hallway, they looked around to see if the house was occupied. They entered a bedroom and located a black safe. Gorges handed his gun to Gallagher, picked up the safe, and ran out of Ortega's house.

¶ 8 Ortega testified that, on the day in question, he was preparing to take a shower when he heard his dog bark. He was home alone, and his car was in the driveway. Through a window, he saw a Durango driving off and two masked men running toward his house. He felt the blood drain from his head, and he panicked. He felt scared because he thought the men were coming to "do something to [him]." He ran to the back of his house and tried to open a window. In the process, he punched through the window's screen and broke a piece of furniture. He then ran barefoot out of his front door to his neighbor's house. Ortega's neighbor, Sam King, was in his driveway when he saw two masked men running toward Ortega's house. Each man had a gun in his hand. King called 911. He saw the men enter Ortega's house. Ortega's car was in the driveway. Then King saw Ortega run barefoot out of his house in his boxers and an undershirt. King testified that Ortega appeared to be in imminent danger. A short while later, Ortega saw the masked men run out of his house. Ortega ran into the street and yelled. One of the men pointed a gun at Ortega. One of the men also pointed a gun at King. The police arrested Gallagher, Gorges, Fyfe, and defendant a few minutes later.

¶ 9    The jury found defendant guilty of home invasion and residential burglary. After the trial court denied the defense's postjudgment motion, defendant filed a timely notice of appeal. As noted, after defendant's appointed attorney withdrew, defendant filed a brief *pro se*.

¶ 10                              II. ANALYSIS

¶ 11    Due to a variety of Illinois Supreme Court Rule violations, we are unable to reach the merits as to the issues defendant raises in all but one section of his brief. Because the defects in section three of defendant's brief are not so substantial as to preclude our review, we address the sufficiency of evidence issue appearing in that section.

¶ 12                              A. Forfeiture

¶ 13    The State moved to dismiss the appeal for multiple reasons, including that defendant failed to comply with Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020). This is defendant's third attempt to file a compliant brief. This court struck his first two briefs for failure to comply with Illinois Supreme Court Rules. In two separate written orders, we offered defendant some guidance. We also invited him to use a standardized form that is available online. Despite this guidance, the instant brief violates multiple rules.

¶ 14    Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020) governs the contents of an appellant's brief. A *pro se* litigant is not granted more lenient treatment than attorneys as to appellate briefing rules. *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 78. The appellate court "is not a repository into which an appellant may foist the burden of argument and research." *Velocity Investments, LLC v. Alston*, 397 Ill. App. 3d 296, 297 (2010). It is within the appellate court's discretion to dismiss an appeal for failure to comply with the rules of procedure. *Longo*

*Realty v. Menard, Inc.*, 2016 IL App (1st) 151231, ¶ 18. We decline to dismiss the appeal, but we will instead deem forfeited the claims in sections one, two, four, five, and six of defendant's brief.[2]

¶ 15　In section one, defendant contends, in part, that the prosecutor committed misconduct during closing argument. Other than requesting plain-error review, defendant does not explain the plain-error test or how it applies. Next, defendant lists a variety of contentions of alleged prosecutorial misconduct. Many of the facts contained in these contentions do not appear in his statement of facts. Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020) requires a statement of facts that contains the facts "necessary to an understanding of the case." Other than providing general boilerplate at the beginning of this section, defendant does not cite any apposite cases or otherwise engage in substantive analysis of any of his contentions. In this section, as in the other forfeited sections, defendant does not set forth a cogent legal argument that is capable of appellate review. See *Sakellariadis v. Campbell*, 391 Ill. App. 3d 795, 804 (2009) ("The failure to assert a well-reasoned argument supported by legal authority is a violation of Supreme Court Rule 341(h)(7) ***, resulting in waiver.").

¶ 16　In section two, defendant argues, in part, that the prosecutor shifted the burden of proof during closing argument. Defendant again asks us to review this contention as plain-error, but he does not demonstrate how the plain-error test would apply. Defendant does not engage in any substantive analysis or cite any case law other than general boilerplate. He does not even attempt to explain why be believes that the prosecutor improperly shifted the burden of proof.

¶ 17　In section four, defendant asks the court to use its authority under Illinois Supreme Court Rule 615(b)(3) (eff. Jan. 1, 1967) to reduce his home invasion conviction to attempted home

---

[2] We are using and referring to defendant's numbering of the issues in his brief.

invasion. But, section four does not include either case law or a cogent legal argument. In section five, defendant argues that the trial court erred by refusing the defense's proposed jury instruction on attempt. In support of that argument, defendant cites *People v. Cramer*, 85 Ill. 2d 92 (1981), which the trial court considered in its ruling rejecting the instruction. However, defendant engages in no substantive analysis of this case.

¶ 18     In section six, defendant alleges ineffective assistance of counsel, but he does not include any discussion or analysis of *Strickland v. Washington*, 446 U.S. 668 (1984). He also does not include a standard of review, in violation of Illinois Supreme Court Rule 341(h)(3) (eff. Oct. 1, 2020). Here, again, defendant fails to provide a cogent legal argument, only contentions. "Mere contentions, without argument or citation to authority, do not merit consideration on appeal." *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 12.

¶ 19     Additionally, in violation of Illinois Supreme Court Rule 341(c) (eff. Oct. 1, 2020), defendant did not submit a certificate of compliance. Further, in violation of Illinois Supreme Court Rule 342 (eff. Oct. 1, 2020), defendant does not include an appendix. Finally, defendant's reply brief raises new issues, in violation of Illinois Supreme Court Rule 341(j) (eff. Oct. 1, 2020).

¶ 20     Given the many deficiencies in defendant's brief, we would be justified in dismissing the appeal. See *Hall*, 2012 IL App (2d) 111151, ¶ 15. We choose not to do so and deny the State's motion to dismiss this appeal. Instead, we deem forfeited the contentions in sections one, two, four, five, and six of defendant's brief. We will, however, address the merits of section three, insofar as defendant challenges the sufficiency of the evidence. Although section three contains many of the same deficiencies as the forfeited sections, defendant generally sets forth a cogent legal argument in section three that is capable of review. Further, the statement of facts contains

the facts necessary for an understanding of the issues in this section. Because we choose to address the merits of section three, we deny the State's motion to dismiss the appeal.

¶ 21                       B. Sufficiency of the Evidence (Home Invasion)

¶ 22    Defendant contends that the evidence at trial was insufficient to prove him guilty of the offense of home invasion beyond a reasonable doubt. "Where a criminal conviction is challenged based on insufficient evidence, a reviewing court, considering all of the evidence in the light most favorable to the prosecution, must determine whether any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime." *People v. Brown*, 2013 IL 114196, ¶ 48. That standard of review recognizes the responsibility of the trier of fact to resolve any conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the evidence. *Brown*, 2013 IL 114196, ¶ 48. Accordingly, "a reviewing court will not substitute its judgment for that of the trier of fact on issues involving the weight of the evidence or the credibility of the witnesses." *Brown*, 2013 IL 114196, ¶ 48.

¶ 23    A person who is not a police officer acting in the line of duty commits home invasion when, he (1) knowingly enters the dwelling place of another without authority, (2) knows or has reason to know that one or more persons is present, (3) is armed with a firearm, and (4) either uses force or threatens the imminent use of force upon any person within the dwelling. 720 ILCS 5/19-6(a)(3) (West 2014). "A person is legally accountable for the conduct of another when *** either before or during the commission of an offense, and with the intent to promote or facilitate that commission, he or she solicits, aids, abets, agrees, or attempts to aid that other person in the planning or commission of that offense." 720 ILCS 5/5-2(c) (West 2014). Defendant argues that the evidence was insufficient as to two elements of the home invasion statute, and we will address

both in turn. We will first address the element regarding knowledge that a person is in the dwelling. Then we will address the element regarding the threat of the imminent use of force.

¶ 24                              1. Knowledge Requirement

¶ 25    Defendant maintains that he and his cohorts did not have knowledge that a person was present because, among other things, Ortega's home was not surveilled.

¶ 26    The State contends that the knowledge requirement was proven beyond a reasonable doubt because multiple witnesses testified that Ortega's car was in the driveway. The State also argues that multiple witnesses, including defendant, indicated that Ortega was home.

¶ 27    Relevant considerations regarding whether the defendant knew or had reason to know that a person was present in the home include the time the entry took place, the attire of the defendant, whether the defendant rang the front doorbell, and the time of the defendant's arrival at the house. *People v. Price*, 2011 IL App (4th) 100311, ¶ 18-20.

¶ 28    Here, evidence of knowledge was overwhelming. The State's evidence showed that defendant, Gorges, and Gallagher tried to conceal their identities, indicating that they expected to encounter someone in the home. Gorges and Gallagher wore hoods, masks, and gloves. See *Price*, 2011 IL App (4th) 100311, ¶ 19 (noting that the defendants' attire of bandanas, stocking caps, and hooded jackets, was indicative of their attempt to conceal their identities). Defendant tried to conceal his identity as well, by remaining in the Durango so that Ortega would not recognize him. Additionally, King, Gorges, and Fyfe testified that Gorges and Gallagher were armed with firearms. Gorges and King testified that the firearms were displayed. Gorges testified that Gallagher cocked both firearms in the garage and that, when they entered the home, they looked around to see if anybody was present, indicating that the men expected to encounter someone in the home. The time of day that the incident occurred is also relevant to our analysis. *Price*, 2011

IL App (4th) 100311, ¶ 18. This incident occurred around 3 p.m., and it was not uncommon for Ortega to be home around this time. Earnest testified that defendant wanted to figure out Ortega's schedule because he wanted to confront him at home. However, the most significant evidence indicating that the home was occupied was the testimony of Fyfe, Ortega, and King, that a car was in the driveway. The evidence showed that defendant saw the car too and that he knew it was Ortega's. All of this evidence established beyond a reasonable doubt that defendant, or somebody for whose conduct defendant was accountable, knew or had reason to know that somebody was present within Ortega's house.

¶ 29                                     2. Threat of Force

¶ 30     Next, defendant maintains that the evidence was insufficient to prove that he, or someone for whose conduct he was accountable, threatened the imminent use of force against a person within the dwelling. Specifically, defendant argues that there was no direct interaction between Ortega and either Gorges or Gallagher.

¶ 31     The State responds that Gorges and Gallagher communicated a threat of force by running toward Ortega's house while wearing masks and displaying firearms. Ortega perceived that threat, so he fled his home in his underwear.

¶ 32     Defendant misunderstands the law. The offense of home invasion "is comprised of acts and conduct of a defendant both within and without the dwelling place." *People v. Kovacs*, 135 Ill. App. 3d 448, 451 (1985). The offense does not require the unlawful entry to preclude the threat of force. *Kovacs*, 135 Ill. App. 3d at 451. Further, there can be a home invasion even though the occupant flees the dwelling before the defendant enters. *People v. Mata*, 316 Ill. App. 3d 849, 854 (2000). To hold otherwise would defeat the purpose of the home invasion statute, which is to protect people in their homes. *People v. Kolls*, 179 Ill. App. 3d 652, 655 (1989).

¶ 33    At approximately 3 p.m. on June 12, 2015, Ortega heard his dog bark and looked out of his front window. He saw two masked men running toward his home. He felt the blood drain from his head, and he panicked. He felt scared because he thought the men were coming to "do something to [him]." He ran to the back of his house and tried to open a window. In the process, he punched through the window's screen and broke a piece of furniture. Having no luck in opening the window, he ran barefoot out of the front door of his house, wearing only his boxers and an undershirt. Hence, not only did Ortega's subjective testimony indicate that he perceived a threat, but his conduct supports that finding as well.

¶ 34    Thus, we affirm the judgment of the circuit court of Kendall County.

¶ 35                          III. CONCLUSION

¶ 36    For the foregoing reasons, we affirm.

¶ 37    Affirmed.